UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANK HERNANDEZ, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04 C 7844 |
| ) | |
| MIDLAND CREDIT MANAGMENT, ) | Judge Rebecca R. Pallmeyer |
| INC.; MRC RECEIVABLES ) | |
| CORPORATION; and ENCORE ) | |
| CAPITAL GROUP, INC., formerly ) | |
| MCM CAPITAL GROUP, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

On November 14, 2004, Plaintiff Frank N. Hernandez, Jr. received a dunning letter from Defendant Midland Credit Management, Inc. (hereinafter, "MCM,") as part of MCM's attempt to collect more than $3,000 in debt. MCM enclosed a privacy notice with this letter, disclosing that MCM or its parent corporation, Defendant Encore Capital Group, Inc. (hereinafter, "Encore"), might share nonpublic information gathered in the course of debt collection with certain nonaffiliated third parties, and that Hernandez had the option to opt out of such disclosures by taking certain affirmative steps. Contending that these statements violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter, "FDCPA"), Hernandez brought suit against MCM and Encore for statutory damages and attorneys fees.[1] Specifically, Hernandez believes that the privacy notice indicates either that Defendant MCM and Defendant Encore actually engage in

---

[1] Plaintiff had also originally included MRC Receivables Corp. as a defendant in this suit, but has since agreed to drop this party in exchange for certain stipulations from the remaining Defendants unrelated to the resolution of this motion.

prohibited third-party disclosures and publications of debtors' information, or have illegally threatened to do so as part of a debt collection effort.

Hernandez now moves for judgment on the pleadings. For the following reasons, the court denies his motion.

## STATEMENT OF FACTS

Illinois resident Hernandez, at some unspecified point, incurred several hundreds of dollars' worth of debt to Providian National Bank. (Compl. ¶ 3, Ex. A at 1.) MRC Receivables Corp.[2] (hereinafter, "MRC,") acquired Hernandez's debt from Providian National Bank. (*Id.*)

On November 14, 2004, Hernandez received a dunning letter from MCM,[3] stating, in relevant part:

> MRC Receivables Corp. recently purchased your PROVIDIAN NATION B account and Midland Credit Management, Inc. ("MCM"), a debt collection company, is the servicer of this obligation. As the new servicer of this account, we would like to find a positive resolution to your account.
>
> Midland Credit Management, Inc. (MCM) is currently able to offer you a substantial discount of **50% *off*** your Current Balance ***if we receive payment by 12-29-2004.***
>
> What's In It For You? Once MCM receives your payment of $1,567.63, we will:
> • Notify the credit bureaus that the debt is "Paid".
> • Immediately stop all recovery activity on this account.

(Compl. ¶¶ 19-20, Ex. A at 1.) The letter explains that any payment on the debt–to which an MCM account number was given–should be made payable to MCM and remitted to MCM. (*Id.* at Ex. A.

---

[2] MRC is a Delaware corporation with its principal place of business in California. (Compl. ¶ 4.)

[3] MCM is a Kansas corporation with its principal place of business in California. (Compl. ¶ 5.)

2

at 1.)

Both MCM and MRC are wholly owned subsidiaries of the publicly-traded Delaware corporation Encore.[4] (*Id.* at ¶ 11.) Defendant Encore prepared a privacy notice that Hernandez received with the dunning letter. (*Id.* at ¶ 21.) The privacy notice states that Encore, on behalf of its affiliates, including MCM, "is delivering this Privacy Notice so that you understand what nonpublic personal information we gather about you, how we use or share that nonpublic personal information, and the safeguards we have in place in order to protect that nonpublic personal information." (*Id.* at Ex. A at 3.) The privacy notice explains that:

> In connection with collection on, or servicing, your account, we collect nonpublic personal information about you from the following sources:
> - Directly from you, application or other forms (e.g., your name, address, social security number, telephone number and other information obtained from our communications with you);
> - From your account transactions with us, our affiliates or others including, without limitation, the originating creditor (e.g., account balance, payment history, banking information and customer information);
> - From consumer reporting agencies (e.g., creditworthiness or credit history); and
> - From other nonaffiliated third parties (e.g., providers of location information and demographic information).

(*Id.*) The notice states, further, that Encore and its affiliates reserve "the right to disclose all the nonpublic personal information" they collect to third parties, including:

> - Financial service providers, such as mortgage bankers or other lenders;
> - Non-financial companies, such as direct marketers or retailers.

(*Id.*) Finally, the Encore privacy notice includes an opt-out provision advising Hernandez that if he

---

[4] Encore is headquartered in the same San Diego offices as MCM and MRC. (Compl. ¶ 11.) Encore also operated under the name MCM Capital Group, Inc. at the time relevant to this action.

wished to prevent the disclosure of nonpublic personal information to nonaffiliated third parties, he must make a request for non-disclosure in writing. (*Id.*) The notice explained that such a request must include Hernandez's MCM account number and must be mailed to "MCM Privacy Notice," at an address different from the MCM address to which Hernandez was to remit payments. (*Id.*)

Hernandez alleges that debt collectors often sell lists of people who have not paid their debts to issuers of subprime credit cards and mortgage loans, to enable those issuers to make loans to the listed debtors. (*Id.* at ¶ 30.) Hernandez excerpts Encore's Report on SEC Form 10-K for the twelve months ending December 31, 2003 (hereinafter, "Rep. SEC 10-K"), as evidence that Encore and MCM engage in this practice. (*Id.* at ¶ 31.) The report does not directly support Plaintiff's allegation that Defendants sell "lists" of debtors. The excerpted provision states:

> *Account Balance Transfer.* We may transfer to our credit card partner accounts with a low expected value or those for which collection efforts have failed. The credit card partner may offer the debtor the opportunity to put the balance on a credit card. If the account is transferred we receive an agreed upon payment. We retain the ownership of and the ability to collect on the charged-off accounts that the card issuer has solicited until a successful balance-transfer has occurred.

(*Id.*) The rest of this report was not attached to complaint, but is available for download on the SEC's website. *See* http://www.sec.gov/edgar/searchedgar/companysearch.html. According to this report, the excerpted paragraph appears in a section entitled "Collection Strategies," which also includes the use of "call centers," "legal action," "direct mail," "[debt] sale[s]," and "skip tracing."[5] (Rep. SEC 10-K, pp. 9-11.) Encore employs these collection strategies with respect to what Encore describes as its "systems-driven purchas[ing] and manage[ment] of charged-off consumer receivables

---

[5] In addition to the collection strategies mentioned above, the SEC filing indicates that with respect to some accounts, Defendant Encore does not pursue any collection strategies at all, but rather allows them to remain "inactive." (Rep. SEC 10-K, p. 11.)

4

portfolios." (*Id.* at 3.) Encore states that it "acquires these portfolios at deep discounts from their face values using its proprietary valuation process that is based on the consumer attributes of the underlying accounts." (*Id.*)

## PROCEDURAL HISTORY

On December 3, 2004, Plaintiff Hernandez filed suit against Defendants MCM and Encore, alleging violations of §§ 1692c-1692e of the FDCPA. In its answer, MCM asserted four affirmative defenses: (1) the privacy notice contains no false or misleading statements; (2) MCM did not commit any actionable violation of the FDCPA; (3) any violation of the FDCPA was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such an error; and (4) MCM "may possess certain arbitration rights based on contracts entered into by" Hernandez. (Defendant, Midland Credit Management, Inc.'s Answer and Affirmative Defenses to Plaintiff's Complaint (hereinafter, "Def. MCM's Answer"), pp. 11-12.) Encore asserts these same affirmative defenses in its answer, adding that: (1) Encore did not engage in any debt collection activities and (2) is not a debt collector. (Defendant, Encore Capital Group, Inc.'s, Answer and Affirmative Defenses to Plaintiff's Complaint (hereinafter, "Def. Encore's Answer"), pp. 12-13.)

Plaintiff now moves for judgment on the pleadings on the issue of Defendants' liability.

## DISCUSSION

**I.      Standard of Review**

When a party attempts "to dispose of the case on the basis of the underlying substantive merits," the appropriate standard for assessing a motion for judgment on the pleadings "is that applicable to summary judgment, except that the court may consider only the contents of the

5

pleadings." *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). Thus, when a plaintiff moves for judgment on the pleadings in an FDCPA case, a court may only grant the motion if the plaintiff clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law based on the pleadings viewed in the light most favorable to the defendants. *Turner v. J.V.D.B. & Assocs, Inc.*, 330 F. Supp. 2d 998, 1000 (N.D. Ill. 2004) (citing *Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987)); 5A Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1368 at 530 (1990)). The pleadings "consist of the complaint, the answer, and any written instruments attached as exhibits."[6] *Housing Auth. Risk Retention Group, Inc. v. Chicago Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004); *see also* FED. R. CIV. P. 12(c). In deciding a motion for judgment on the pleadings, the court may also take judicial notice of "the contents of certain matters in the public record." *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 600 (7th Cir. 2004) (relying on administrative findings about the plaintiff's medical condition in a disability discrimination suit).

## II.     Consideration of SEC Filings

As set forth above, the court has taken judicial notice of Encore's Report on SEC Form 10-K for the twelve months ending December 31, 2003. Defendants object, arguing that an SEC filing should not be judicially noticed where the contents are subject to dispute. (Defendants' Response to Rule 12(c) Motion for Judgment on the Pleadings (hereinafter, "Defs.' Mem."), p. 3.) Defendants

---

[6] Plaintiff includes a number of exhibits that were not attached to his complaint in moving for judgment on the pleadings, including Defendants' responses to interrogatories. Where a party submits material outside the pleadings on a motion for judgment on the pleadings, the court must either refrain from considering the extraneous submissions or provide the other parties with an opportunity to submit supplementary materials as well. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 (7th Cir. 2000). This court chooses the first option.

6

cite the Seventh Circuit's decision in *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344 (7th Cir. 1995), in support of that proposition.

In *Hennessy*, an employment discrimination case, the district court was attempting to determine the size of the defendant corporation so as to assess the applicability of a punitive damages cap under the 1991 Civil Rights Act. *Id.* at 1354. The district court had received conflicting testimony, but declined to take judicial notice of an SEC filing that pegged the number on the higher end. *Id.* The *Hennessy* court affirmed this decision not to take judicial notice because the parties disputed the relevance of the SEC filings which covered more units of the defendant corporation than the one unit specifically involved in the suit. *Id.* at 1355.

No such dispute exists here. Defendant Encore does not contest the excerpted portions from this SEC filing in its answer, but rather states that "the SEC filings speak for themselves." (Def. Encore's Answer ¶ 31.) This court will take judicial notice of this SEC filing. *See, e.g.*, *In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 388 n.7 (4th Cir. 2005) (observing, in a securities fraud case, that the Second, Third, and Fourth Circuits all allow a court to examine a public document relied on in the complaint without converting a motion to dismiss into a motion for summary judgment); *R2 Investments LDC v. Phillips*, 401 F.3d 638, 640 n.2 (5th Cir. 2005) (observing, in a securities fraud case, that SEC filings may be considered for their content, but not for the truth of statements therein); *Bryant v. Dupree*, 252 F.3d 1161, 1163 n.1 (11th Cir. 2001) (authorizing a district court in a securities fraud case to take judicial notice of public documents filed with the SEC for the purpose of determining what statement the document contains).

The court declines to take judicial notice of SEC filings which were not mentioned in the complaint or Plaintiff's initial brief on this motion and which Defendants would thus not have had

an opportunity to contest in either their answers to the complaint or response brief on this motion. The specific filing that this court excludes is the filing attached to the Plaintiff's reply brief, which purports to include the servicing contract between MRC and MCM with respect to debts purchased by MRC. In addition to excluding this filing on equity grounds, the court finds that Plaintiff has not included enough information about this filing for the court to find this filing and compare its entirety to the portion excerpted here. FED. R. EVID. 201(d).

### III. FDCPA Claims

The FDCPA seeks to eliminate abusive debt collection practices. 15 U.S.C. § 1692(e). To that end, the Act prohibits all communications "in connection with the collection of any debt" between a debt collector and "any person other than the [debtor], his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector" "without the prior consent of the [debtor] given directly to the debt collector."[7] 15 U.S.C. § 1692c(b). The Act also prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Examples of such harassment include: "[t]he publication of a list of consumers who allegedly refuse to pay debts" and "[t]he advertisement for sale of any debt to coerce payment of the debt." 15 U.S.C. § 1692d(3)-(4). Excluded from the former prohibition is publication of a list of debtors to a credit reporting agency or any person to whom a credit reporting agency could furnish a credit report. 15 U.S.C. § 1692d(3). Finally, "a debt collector may

---

[7] The Act makes an exception from this provision for communications between the debt collector and third parties made in order to determine the location of the debtor, 15 U.S.C. § 1692c(b), and regulates these communications separately. 15 U.S.C. § 1692b.

not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Prohibited representations include: "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken" and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(5), (10).

The FDCPA covers only attempts to collect debts incurred "primarily for personal, family or household purposes," 15 U.S.C. § 1692a(5), and draws a distinction between "creditors" and "debt collectors." The Act defines creditors as "any person who offers or extends credit creating a debt or to whom a debt is owed, but . . . does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such a debt for another." 15 U.S.C. § 1692a(4). A debt collector is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[8] 15 U.S.C. § 1692a(6). Only debt collectors can violate the FDCPA, and violation of any provision triggers liability. 15 U.S.C. § 1692k(a).

Plaintiff's theory of the case is that the privacy notice he received and the actions Defendants are assertedly willing to take violate the FDCPA. The privacy notice states that Defendants will disclose nonpublic information about Plaintiff to third parties in violation of the FDCPA.

---

[8] The statutory definition includes six specific exemptions from this definition, but because neither party argues that any party falls into one of these exempt categories, the court will forgo their lengthily recitation.

9

(Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings (hereinafter, "Pltf.'s Mem."), pp.9-10.) Actual disclosure to these prohibited third parties would constitute a communication prohibited by § 1692c, while the false statement that the debt collector is entitled to make such disclosures or the threat that the debt collector would make such disclosures violates § 1692e. (*Id.* at 10-11.) Plaintiff notes that the opt-out requirement for such disclosures set out in the privacy notice violates the express requirement of § 1692c, which gives the debtor this privacy right without taking any action, and also constitutes a false statement of debtor's rights in violation of § 1692e. (*Id.* at 11.) Finally, Plaintiff argues that the putative disclosures amount to a harassing publication of lists of debtors in a manner that violates the FDCPA. (*Id.* at 10-11.) Actual publication would violate § 1692d, while the false statement that the debt collector is entitled to make such publications or the threat that the debt collector would make such publication violates § 1692e. (*Id.*)

Defendants argue that Encore is not a debt collector and as such is not subject to the liability under the FDCPA for its actions. (Defs.' Mem., pp. 5-10.) Additionally, Defendants contend that neither Encore nor MCM can be found to have violated the FDCPA as a matter of law because there are factual disputes on this point and because they have presented a valid affirmative defense, specifically the bona fide error defense. (*Id.* at 11-12.)

This court turns to the threshold question of whether Plaintiff can establish on the pleadings that Defendant Encore is a debt collector for the purpose of FDCPA liability before turning to the substantive question of whether or not the pleadings establish an FDCPA violation.

A. Debt Collectors

Defendants concede that MCM is a debt collector for the purpose of applying the FDCPA to its actions.[9] (Defs.' Mem., p. 1.) The parties differ, however, on the questions of whether Encore is similarly covered by the statutory provisions.

Defendant Encore is the sole shareholder in the corporation that is Defendant MCM. Defendants note, however, that the Seventh Circuit has repeatedly held that a shareholder in a corporation is not liable for the actions of the corporation without some showing that corporate formalities have been ignored. (Defs.' Mem., pp. 5-6.) For example, in *Pettit v. Retrieval Masters Creditors Bureau*, the Seventh Circuit refused to extend liability to the largest shareholder and president of a debt collector corporation without a showing sufficient to pierce the corporate veil. 211 F.3d 1057, 1059-60 (7th Cir. 2000). Moreover, the Seventh Circuit warned in *White v. Goodman* that frivolous allegations of a shareholder's joint liability could merit sanctions. 200 F.3d 1016, 1019 (7th Cir. 2000).

Plaintiff here explicitly denies that his theory of liability is based on the idea that Defendant Encore and Defendant MCM were part of a single economic enterprise. (Reply Memorandum in

---

[9] Defendants state:

> MCM is a collection agency that collects consumer debts. MCM is a "debt collector" under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). MCM sent Mr. Hernandez a collection letter dated November 14, 2004 in an attempt to collect a debt originally owed to Providian National Bank that was assigned to MRC. Plaintiff claims that this collection letter was false and misleading in violation of the FDCPA because it contained a "privacy notice" that suggests that the debtor's information may be disclosed to prospective grantors of credit. An FDCPA claim against MCM is hardly noteworthy.

(Defs.' Mem., p. 1.)

11

Support of Plaintiff's Motion for Summary Judgment (hereinafter, "Pltf.'s Reply"), p. 6.) Instead, Plaintiff argues that Defendant Encore meets the statutory definition of a debt collector under the FDCPA directly by its "material[] participat[ion] in the debt collection process." (Pltf.'s Mem., p. 6.) Plaintiff's theory is that Defendant Encore's privacy notice, sent on behalf of Defendant MCM, was part of Defendant MCM's debt collection effort. (*Id.* at 7.) Plaintiff argues that a debtor might be induced to pay on the delinquent claim so as to avoid the potentially financially damaging and embarrassing disclosures to third parties threatened in Encore's notice. (*Id.*)

In support of this position, Plaintiff cites *Romine v. Diversified Collection Servs., Inc.*, 155 F.3d 1142 (9th Cir. 1998). In *Romine*, DCS, a debt collector, contracted with Western Union for use of Western Union's "Talking Telegram." *Id.* at 1143. Western Union had advertised the Talking Telegram as a way of stimulating debtors' responses to debt collection efforts. *Id.* at 1144. DCS gave Western Union the names and addresses of debtors for whom it did not have phone numbers. *Id.* Western Union would then send each debtor a telegram asking him or her to call a Western Union phone number and enter their own phone number for identity confirmation. *Id.* Western Union would then turn these confirmed phone numbers of debtors back over to DCS. *Id.* When DCS was sued for an alleged FDCPA violation, the plaintiffs also named Western Union, which secured a dismissal on the theory that it was not a debt collector. *Id.* at 1144-45. The *Romine* court reversed that decision by the district court, finding that "Appellant's pleadings and other materials in the record leave open the *possibility* that Western Union's activities amount to an indirect attempt to collect a debt." *Id.* at 1147 (emphasis added).

This court finds itself in a similar position as the *Romine* court. It is possible that Defendant Encore's inclusion of the privacy notice with Defendant MCM's dunning letter amounts to an

12

indirect attempt to collect a debt.[10] It is also possible, however, that Defendant Encore's inclusion of the privacy notice has nothing to do with debt collection. Defendant Encore denies that it participated in the complained of debt collection activities, and raised in its defense the possibility that the privacy notice was not a debt collection effort, but simply an attempt to comply with the requirements the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801, *et seq.*, another federal law discussed more extensively below. (Def. Encore's Answer ¶ 12, p. 12.) Because these competing possibilities cannot be resolved on the pleadings alone, judgment on the pleadings for Plaintiff with respect to this issue would be inappropriate.

### B. Violation of the FDCPA

The pleadings alone also cannot resolve the Defendants' liability under the FDCPA. As noted, plaintiff's theory of the case is that the privacy notice he received was part of the same debt collection contact as the dunning letter to which it was attached. (Pltf.'s Mem., pp. 9-11.) That notice states that Defendants may disclose Hernandez's nonpublic information to nonaffiliated third parties. (*Id.*) Defendant Encore's SEC filings acknowledge that Defendant Encore does in fact make these disclosures. (*Id.*)

Both Defendants have raised the statutory bona fide error affirmative defense.[11] (Defs.' Mem., p. 12.) Notwithstanding a showing of any actual violation of any other provision of the FDCPA, § 1692k(c) precludes liability

---

[10] Defendant Encore's SEC filings certainly suggest that it is thoroughly enmeshed in the debt collection business.

[11] Defendants also assert that the notice itself does not violate the FDCPA, but dedicate the majority of their brief to arguing the affirmative defense point. (Defs.' Mem., pp. 11-12.)

13

> if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). To qualify for this defense, Defendants must show: (1) the FDCPA violation was not intentional; (2) the FDCPA violation resulted from a bona fide error; and (3) Defendants maintained procedures reasonably adapted to avoid such an error. *Kort v. Diversified Collection Servs. Inc.*, 394 F.3d 530, 537 (7th Cir. 2005) (citing *Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir. 1997)). In *Kort*, the Seventh Circuit affirmed summary judgment in favor of a debt collector that faced liability for allegedly misstating the debtor's rights in violation of § 1692e of the FDCPA. 394 F.3d at 535. The debt collector took its statement of the debtor's rights directly from another federal statute, and the *Kort* court found this attempt to comply absolved the debt collector from liability under the FDCPA. *Id.* at 537-39.

Defendants in the instant case claim that the privacy notice is an attempt to comply with the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801, *et seq.* (hereinafter, "GLB"). (Defs.'s Mem., p. 10.) GLB is a federal statute designed to protect consumers' private nonpublic information as collected by financial institutions. 15 U.S.C. § 6801(a). The statute prevents financial institutions from disclosing nonpublic private information about a consumer to nonaffiliated third parties unless a privacy notice like the one Plaintiff received is sent to the consumer. 15 U.S.C. §§ 6802, 6804. This statute, unlike the FDCPA, permits an opt-out rather than an opt-in regime with respect to third-party disclosures. 15 U.S.C. § 6802. Nothing in the Defendants' pleadings would prevent Defendants from proving in a later stage of this litigation an affirmative defense based on GLB to Plaintiff's allegation that Defendants misstated debtors' rights, threatened debtors, or sought to harass debtors by sending GLB-compliant privacy notices.

The cases Plaintiff cites are not to the contrary. (Pltf.'s Mem., pp. 11-14.) They hold simply that the presence of a GLB-related defense does not support a motion to dismiss–not that such a defense is irrelevant to a motion for judgment on the pleadings. The Southern District of Indiana declined to dismiss a similar FDCPA suit based on an allegedly offending privacy notice when the debt collector pointed to the potential GLB compliance of the privacy notice. *Stewart v. Asset Acceptance*, 04-CV-1213, pp. 8-9 (S.D. Ind. Nov. 19, 2004). The *Stewart* court held that so long as the plaintiff's complaint does not admit "all of the ingredients of an impenetrable defense" or the defense is "unmistakable" "from the face of the complaint," an affirmative defense is irrelevant to a defendant's motion to dismiss the complaint for failure to state a claim. *Id.* at 9 (citing *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004); *Walker v. Thompson*, 288 F.3d 1005, 1009-10 (7th Cir. 2002)). Judge Plunkett of this Court cited *Stewart* in reaching the same conclusion where another debt collector raised its GLB-related affirmative defense on a motion to dismiss plaintiff's FDCPA complaint *Blair v. Sherman Acquisition*, 2004 WL 2870080, *12-13 (N.D. Ill. Dec. 13, 2004). The *Blair* court added, "Defendants have not made the requisite showing of this affirmative defense that would dispose of this claim." *Id.* at 13. *Chapman v. Worldwide Asset Management*, 04-C-7625 (N.D. Ill. Apr. 6, 2005), is, in this court's reading, indistinguishable from *Stewart* and *Blair*, both of which it cites. *Chapman*, at 9-10. Just as the defendants in *Chapman*, *Stewart*, and *Blair* could not effectively prevail on the issue of liability without proving their affirmative defense, Plaintiff in the instant case cannot prevail on that same issue before Defendants have been given an opportunity to present any facts related to such a showing.

Given the content of Defendant Encore's SEC filings, it is unlikely that it will be able to prove that it did not make FDCPA-prohibited disclosures to impermissible parties. Moreover,

Defendant MCM and Defendant Encore are unlikely to convince this court that the disclosures of nonpublic information allowable under GLB cannot easily be reconciled with those allowable under the FDCPA in a manner that effectuates Congress's legislative intent in enacting both statutes. Plaintiff might even ultimately prevail on a motion for summary judgment, but at a bare minimum, Defendants are entitled to attempt to convince this court of the merit of their position. Errors of law may constitute bona fide errors under the FDCPA. *See, e.g.*, *Nielsen v. Dickerson*, 307 F.3d 623, 641 (7th Cir. 2002); *Jenkins v. Heintz*, 124 F.3d 824, 832 n.7 (7th Cir. 1997). Furthermore, Defendant Encore's and Defendant MCM's intentions are material to this defense and are in dispute in the pleadings. *See Kort*, 124 F.3d at 537 ("A debt collector need only show that its FDCPA violation was unintentional, not that its actions were unintentional."). At this early stage of the litigation, the court cannot conclude based on the pleadings alone that Defendants could not prove some set of facts consistent with their affirmative defense and thus avoid liability under the FDCPA.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (27) is denied. The court cannot determine as a matter of law that Defendant Encore is a debt collector subject to the FDCPA. Even if it could, this court does not foreclose Defendant Encore's and Defendant MCM's opportunity to prove an affirmative defense to liability under that Act.

ENTER:

Dated: March 14, 2006

_____
REBECCA R. PALLMEYER
United States District Judge