**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Frank Hernandez, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04 C 7844 |
| | ) | |
| vs. | ) | Judge Pallmeyer |
| | ) | |
| Midland Credit Management, Inc.; MRC | ) | Magistrate Judge Schenkier |
| Receivables Corporation; and Encore Capital | ) | |
| Group, Inc., formerly known as MCM Capital | ) | |
| Group, Inc. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

Plaintiff submits this memorandum in support of his motion for summary judgment against defendants Midland Credit Management, Inc. ("MCM") and Encore Capital Group, Inc., ("Encore"). For the following reasons, Plaintiff's motion should be granted.

I.  **ISSUES PRESENTED**

1. Whether the privacy notice threatens to disclose information to persons or entities that the FDCPA prohibits disclosure to?

2. Whether the privacy notice impermissibly requires the debtor to take action to stop the disclosures to third parties?

3. Whether the privacy notice, which includes the statement that "In connection with collecting on ... your account, we collect nonpublic personal information about you" and describes how this information may be used, is part of the debt collection process?

4. Whether Encore is a debt collector under the FDCPA?

1

The privacy notice states that in collecting on the account, defendants collect personal information on the debtor such as payment history, banking information, credit history and demographic information. (Appendix A) Defendants then claim the right to disclose that information to third parties such as mortgage bankers, direct marketers, retailers and financial institutions. (Appendix A) The FDCPA prohibits the disclosure of such information to those third parties. 15 U.S.C. § 1692c. Defendants are liable for making the threat even if not carried out. 15 U.S.C. § 1692e. But, it's not just an idle threat, they actually disclose prohibited information to third parties as part of their debt collection process. Specifically, they disclose customer account information to Capital One to see if Capital One is interested in extending financing to the debtor on the condition that the debtor use it to pay the Midland debt.

In order to stop the illegal disclosures, the privacy notice improperly requires the debtor to send in an opt-out notice. (Appendix A)

Both defendants are liable because each is a debt collector. Defendants concede that MCM is a debt collector. Encore is also a debt collector for several reasons. The privacy notice is from Encore. (Appendix A) The debt being collected is formally owned by Midland Receivables which is a wholly owned subsidiary of Encore. (SMF, ¶¶ 17, 19) MRC has no employees and all of its officers and directors are also officers and directors of Encore. (SMF, ¶ 48) Encore holds itself out as being in the debt collection business in order to raise the funds that MRC uses to buy the debts being collected. (SMF, ¶¶ 11-15, 25, 27, 34) Encore devises the "collection strategies" used by its subsidiaries, one of which is refinancing or "balance transfer" programs with Capital One. (SMF, ¶¶ 21, 27-28, 31, 33, 35) Encore has stipulated that it will not use the absence of the debt owner, MRC, to plaintiff's claims. Appendix R

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). The moving party bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The substantive law of the issues raised by the claims asserted in the complaint determines what is "material" for purposes of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 251.

A District Court should enter judgment for the plaintiff in an FDCPA case without extrinsic evidence, if the letter is on its face violative of the statute. *Miller, v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000); *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997) (court reversed a judgment for the defendant entered after a bench trial and ordered judgment for the plaintiff); *Chuway v. National Action Financial Services, Inc.*, 362 F.3d 944, 948 (7th Cir. 2004); *Frye v. Bowman, Heintz, Boscia & Vician, P.C.*, 193 F.Supp.2d 1070, 1083-84 (S.D.Ind. 2002).

## III. DEFENDANTS' PRIVACY NOTICE VIOLATES THE FDCPA.

### A. DEFENDANTS THREATEN TO, AND DO, DISCLOSE INFORMATION ABOUT THE DEBTOR TO PERSONS OR ENTITIES THE FDCPA PROHIBITS DISCLOSURE TO.

The FDCPA, § 1692c(b) provides that, except for situations not present here, "a debt collector may not communicate, in connection with the collection of any debt, with any

3

person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

The privacy notice states that "in connection with collecting on ... your account, we collect nonpublic personal information about you" including payment history, banking information, creditworthiness, credit history and demographic information. (Appendix A) Defendants then claim "the right to disclose all of the nonpublic information that we collect" about the debtor to third parties such as mortgage bankers, direct marketers, retailers and financial institutions. (Appendix A) The FDCPA prohibits the disclosure of such information to those third parties. 15 U.S.C. §1692c(b). The statement that defendants would make such disclosures, or has the right to do so, violates 15 U.S.C. §1692e.

False statements made by a debt collector in the course of collecting a debt are *per se* violations of § 1692e(10). "Debt collectors may not make false claims, period." *Randolph v. IMBS, Inc*., 368 F.3d 726,730 (7th Cir. 2004); *Gearing v. Check Brokerage Corp*., 233 F.3d 469, 472 (7th Cir. 2000). Thus, a debt collector's representation that it will do that which the law prohibits is a false statement of the debtor's legal rights. A misrepresentation of the debtor's legal rights violates 1692e. *Juras v. Aman Collection Service, Inc.,* 829 F.2d 739, 743-44 (9th Cir. 1987). Indeed, the FDCPA was enacted to combat practices including "misrepresentation of a consumer's legal rights." S. Rep. No. 95-382, 95th Cong., 1st Sess., at 2-3 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696.

In *Raimondi v. McCallister & Assoc., Inc*., 50 F.Supp. 2d 825, 827 (N.D. Ill. 1999), the defendant claimed that it would contact the plaintiff's employer to determine the plaintiff's financial ability to pay the debt. Once the court determined that the defendant's

4

statement was false, no more analysis was required: "Because § 1692c(b) explicitly prohibits defendant from contacting plaintiff's employer, threatening to do so in order to collect a debt amounts to a false representation in violation of § 1692e(10)." *Id*. at 827.

This rule was applied to the exact situation here in *Chapman v. Worldwide Asset Management, L.L.C.*, 04 C 7625, Dkt. 24 (N.D.Ill., April 6, 2005) (Hart, J.) (Appendix Q), which involved a privacy notice which is virtually identical to the one here in all material respects. Also, like here, the privacy notice was sent along with a collection letter. Judge Hart held

> Since the privacy policy notice was part of an attempt to collect a debt from plaintiff, representations therein that defendants would take actions prohibited by the FDCPA would themselves constitute a violation of the FDCPA regardless of whether defendants thereafter actually engaged in such conduct. *Blair v. Sheman Acquisition*, 2004 WL 2870080 *6-7 (N.D. ILL. Dec. 13, 2004) ; *Stewart v. Asset Acceptance* , No. 04 CV 1213, 6-8 (S.D> Ind. Nov. 19, 2004). By seeking to collect on a debt while notifying plaintiff that they may take such actions, defendants violated §1692e. *Blair*, 204 WL 2870080 at *6-7; *Stewart*, *supra*, at 6-8.

But, defendants' practice is more than just a threat. Actual disclosures are made and violate 15 U.S.C. §1692c. In particular, information about the debtors is disclosed to Capital One pursuant to a refinancing program that defendants refer to as their balance transfer program. (SMF, ¶¶ 41-43) Under the balance transfer program, a list of accounts, including the debtor's name, address and account balance is transmitted to Capital One for its review, without consent of the debtor. (SMF, ¶¶ 40, 42) Capital One reviews the material and notifies Midland of those accounts it would accept for a "balance transfer." (SMF, ¶¶ 41, 43) Defendants then send a letter to the debtors accepted by Capital One explaining the program. (SMF, ¶¶ 39, 44-45) If the debtor consents, Capital One opens a new credit card account, subject to a Capital One contract, and puts the balance owing to Midland as a debt on the Capital One account. (SMF,

¶¶ 32, 36, 38)

Defendants differentiate between the sale of accounts and the account balance transfer program. The Capital One account balance transfer permits a debtor to choose to transfer the balance to Capital One whereby a new debt is incurred with Capital One as opposed to a sale where a debtor's original debt is merely transferred to the prospective buyer and the same debt is owed. (SMF, ¶¶ 36-38) When the debtor makes the first payment to Capital One, Capital One makes a payment of about 9-10% of the amount transferred to Midland, who then cancels its account with the debtor. (SMF, ¶¶ 46-47) The old debt is completely paid and the debtor has a brand new debt with Capital One. (SMF, ¶ 38) This practice amounts to the publication of a list of debtors to third parties in violation of the FDCPA §1692d(3), under which "[t]he publication of a list of consumers who allegedly refuse to pay debts" is defined as "harassment" and a violation of the FDCPA.

The Federal Trade Commission has determined that under these provisions "Debt collectors may not exchange lists of consumers who allegedly refuse to pay their debts. . . A debt collector may not distribute a list of alleged debtors to its creditor subscribers." FTC Official Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097 (Dec. 13, 1988), at 50105.

Defendants recognize that under the FDCPA there are very limited circumstances under which a debt collector could disclose information to a third party and concede that Capital One is not among the limited persons the debt collector may communicate with. (SMF, ¶ 56) The threat to disclose and the actual disclosures described above violated the FDCPA

B. **THE PRIVACY NOTICE IMPERMISSIBLY REQUIRES THE DEBTOR TO TAKE ACTION TO STOP THE DISCLOSURES TO THIRD PARTIES.**

Under § 1692c(b) communication to third parties by the debt collector may not be made "without the prior consent of the consumer given directly to the debt collector...." The privacy notice provides the exact opposite and shifts the burden to the debtor: "If you prefer that we not disclose nonpublic information about you to nonaffiliated third parties; you may opt out of those disclosures, that is, you may direct us not to make those disclosures (other than those disclosures permitted by law). If you wish to opt out of disclosures to nonaffiliated third parties, write your name, address, and account number, on the Opt Out Response Form."[1]

This provision violates the FDCPA. The *Chapman* privacy notice also contained a provision that in order to prevent the disclosures, the addressee must complete and mail in a form requesting to opt out. *Chapman* held this provision to violate the FDCPA because it is "inconsistent with the FDCPA provisions which require that the debt collector obtain actual permission from the customer before disseminating certain information, the privacy policy provides that the customer must affirmatively act to prevent dissemination." *Chapman v. Worldwide Asset Management, L.L.C.*, 04 C 7625, Dkt. 24, p. 9 (N.D.Ill., April 6, 2005) (Hart, J.)

IV. **THE PRIVACY NOTICE IS PART OF THE DEBT COLLECTION PROCESS.**

The language of the privacy notice clearly indicates that the privacy notice was

---

[1] Under this provision the debtor cannot direct Midland not to make disclosures permitted by law. Thus, the debtor may only direct Midland not to make disclosures that are not permitted by law. Although the provision violates the FDCPA on its face, requiring the debtor to request that Midland follow the law is beyond the pale.

sent in connection with defendants' debt collection activities. Plaintiff received the privacy notice as part of a communication to collect on debt. On the second page of the letter there is a box containing the bolded statement: "Please understand this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be obtained and used for that purpose." The statement that any information obtained will be used for debt collection purposes is directly related to the privacy notice which describes what and how information is to be used for collection purposes. (Appendix A) The next page is the privacy notice. It asks in bold, large font print "What information do we collect." It further states that "In connection with collecting on ... your account, we collect nonpublic personal information" and lists the sources from which this information is collected. The cross references in the letter and privacy notice about obtaining information and the explicit statement in the privacy notice that the information is collected in connection with collecting on the account makes it incontrovertible that the privacy notice was sent in connection with the collection of a debt. In fact, defendants stated that the privacy notice indirectly referred to the Capital One account balance transfer program as part of a joint marketing program. (SMF, ¶ 55)

V.      **ENCORE IS A DEBT COLLECTOR UNDER THE FDCPA.**

Under the FDCPA, §1692a(6) a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects, directly or indirectly, debts owed or due or asserted to be owed or due another." For numerous reasons, Encore is a debt collector.

1.      Encore is in the business of purchasing consumers receivables, bad debts,

for collection. (SMF, ¶¶ 11-15, 25, 27, 34). It is a publically traded company and the sole owner of MRC and MCM. (SMF, ¶ 17)

    2.    J. Brandon Black has been the President and CEO of Encore since October 1, 2005. (SMF, ¶ 50) Prior to that he was President, since October 2004, and Chief Operating Officer since May 2000, of Encore. (SMF, ¶¶ 51-52) During this period, Black does not know if he had any position with MRC or MCM. (SMF, ¶¶ 53-54 )

Among Black's duties as President, CEO or COO of Encore was responsibility for all collection activities, including the Capital One account balance transfer program. (SMF, ¶ 33) He is "the architect of many of the analytical procedures and collection processes that ... have been instrumental in Encore's success...." (SMF, ¶ 27 )

The collection letters sent by defendants to those persons approved for the balance transfer program by Capital One went out over Black's signature. (SMF, ¶ 45)

    3.    The privacy notice states it is "From MCM Capital Group, Inc. ('MCMC')[2] and its affiliates." (Appendix A; SMF, ¶ 22) Throughout the notice, the sender and those who take all of the actions described (collection of information, use of information, disclosure of information) are referred to as "we".

    4.    MRC, a company that has no employees and no income, is the technical owner of the debts being collected and a wholly owned subsidiary of Encore. (SMF, ¶¶ 16-17, 19, 48-49) Defendants have stipulated that "neither MCM nor Encore shall use the absence of the owner of the debt as a defense to the plaintiffs' alleged claims or against class certification." Appendix R

---

[2]    The former name of Encore.

Encore is liable as a debt collector because its actions make it a significant participant in the debt collection process. One of its major officers, Black, acting directly on behalf of Encore[3] was the "architect" of the process. (SMF, ¶¶ 27, 33) He signs the letter announcing the program to the debtor. (SMF, ¶ 45) The privacy notice, which is attached to a collection letter, is from Encore. (Appendix A) The collection letter includes a box containing the bolded statement that "Please understand this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose." The privacy notice sent with the collection letter explains in detail the information defendants will obtain and how it will use that information in order to collect the debt.

In the March 14, 2006 opinion denying plaintiff's motion for judgment on the pleadings, this Court, without considering any evidence, stated that it was "possible...that Defendants Encore's inclusion of the privacy notice has nothing to do with debt collection." Now the evidnce is in and that possibility has disappeared. The privacy notice by its terms, the context in which it is delivered and its indirect reference to the Capital One balance transfer program cannot be divorced from the debt collection process. (SMF, ¶ 55) Encore is responsible for the privacy notice.

Encore's involvement in the collection is far greater than that of Western Union in *Romine v. Diversified Collection Services, Inc. et al.*, 155 F.3d 1142 (9th Cir. 1998). In *Romine,* Western Union contracted with DCS, a collection agency, to send letters to debtors directing the debtor to contact Western Union to request an audio telegram in the attempt to

---

[3] If he does not know if he had a position with MRC or MCM, he cannot be acting on their behalf.

collect a debt. *Id.* at 1143-44. The automated message requested verification of the debtor's name, address and phone number. *Id.* at 1144. The message did not contain any language stating that this was an attempt to collect a debt. *Id.* In order to confirm the identity of the debtor, the caller was required to provide his telephone number wherein Western Union provided the unlisted phone number to DCS in order to contact the debtor and attempt to collect the debt. *Id.*

The *Romine* court found that Western Union was a "debt collector" under the FDCPA. The *Romine* court analyzed Western Union advertising materials and its involvement in the debt collection process. The court relied on the advertising materials supplied by Western Union where the program was defined as a "specially developed for the credit and collections industry" and the service was marketed as a "revolutionary new collections service that will stimulate recoveries dramatically." *Id.* at 1143, 1147.

Encore's SEC filings are akin to the advertising materials that the *Romine* court relied upon to determine that Western Union was an "indirect" debt collector. Encore repeatedly states that it is in the collections industry and fails to disassociate itself and business activities from those of MCM and MRC. (SMF, ¶¶ 10-15, 22, 25, 27-28, 30-31, 33-34) Encore purchases the debts. (SMF, ¶¶ 11-15, 15, 25, 27) The privacy notice states that the letter is sent by Encore and its affiliates. (SMF, ¶ 22) Further, Encore develops the collection strategies for its affiliates. (SMF, ¶¶ 27-28, 31, 33) At the very least Encore is indirectly involved in the debt collection process.

## VI.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion and award

summary judgment on liability to Plaintiff.

                                          Respectfully submitted,

                                          /s Daniel A. Edelman
                                          Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Derek B. Rieman
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

12