# APPENDIX D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Frank N. Hernandez, Jr. | ) | |
| | ) | Case No. 04 C 7844 |
| Plaintiff, | ) | |
| | ) | Judge Pallmeyer |
| vs. | ) | |
| | ) | Magistrate Judge Schenkier |
| Midland Credit Management, Inc.; MRC Receivables Corporation; and Encore Capital Group, Inc., formerly known as MCM Capital Group, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT, ENCORE CAPITAL GROUP, INC.'S, ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT**

Defendant, ENCORE CAPITAL GROUP, INC., formerly MCM CAPITAL GROUP, INC., ("ENCORE"), by and through its attorneys, David M. Schultz and Jennifer M. Hanna, and for its answer and affirmative defenses to Plaintiff's Complaint, states as follows:

## INTRODUCTION

1. Plaintiff Frank N. Hernandez, Jr. brings this action to secure redress against unlawful collection practices engaged in by defendants Midland Credit Management, Inc; ("MCM"); MRC Receivables Corporation ("MRC"); and Encore Capital Group, Inc., formerly known as MCM Capital Group, Inc. ("Encore"). Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

**ANSWER: Defendant, ENCORE, admits that Plaintiff purports to state a claim, and seeks relief under, the FDCPA. Defendant denies that it violated the FDCPA and denies that it engaged in any collection practices, unlawful or otherwise. In further answering the allegations contained within Paragraph 1 of Plaintiff's Complaint, Defendant ENCORE denies that Plaintiff is entitled to any damages and/or relief under the FDCPA. ENCORE denies any remaining allegations contained within Paragraph 1 of Plaintiff's Complaint.**

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §§1331, 1337 and 15 U.S.C. §1692k (FDCPA). Venue in this District is proper because defendants' collection communications were received in this District.

**ANSWER: Upon information and belief, ENCORE admits that Defendant MCM sent letters into the Northern District of Illinois, but is without knowledge or information sufficient to form a belief as to the truth of the allegation that the letters were received within same. Defendant ENCORE denies that it sent any collection letters. Notwithstanding, ENCORE states that it does not contest venue or jurisdiction. In further answering the allegations contained within Paragraph 2 of Plaintiff's Complaint, Defendant ENCORE states that arbitration may be the more appropriate venue in which to bring this action as Defendant may possess certain rights to move this action to arbitration based on contracts entered into by the Plaintiff.**

## PARTIES

3. Plaintiff resides in Darien, Illinois.

**ANSWER: Defendant ENCORE is without knowledge or information sufficient to form a belief as to the allegations contained within Paragraph 3 of Plaintiff's Complaint.**

4. Defendant MRC is a Delaware corporation with its principal place of business at 5775 Roscoe Court, San Diego, CA 92123.

**ANSWER: ENCORE admits that Defendant MRC is a Delaware corporation with its principle place of business in San Diego, California. Defendant ENCORE denies the remaining allegations contained within Paragraph 4 of Plaintiff's Complaint.**

5. Defendant MCM is a Kansas corporation with its principal place of business at 5775 Roscoe Court, San Diego, CA 92123. MCM does business in Illinois. Its registered agent and office are CT Corporation System, 208 S. LaSalle St., Chicago, IL 60604.

**ANSWER: ENCORE admits that Defendant MCM is a Kansas corporation with its principle place of business located in San Diego, California. ENCORE admits that Defendant MCM's registered agent and office are CT Corporation System, 208 S. LaSalle St., Chicago, IL 60604. ENCORE admits that Defendant MCM does business in Illinois, but only and exclusively through the means of interstate commerce.**

6. Defendant MRC is in the business of buying bad debts allegedly owed by consumers, including large amounts of credit card debts, for a small fraction of face value and enforcing the debts against the consumers.

**ANSWER: ENCORE admits that Defendant MRC is in the business of buying debts. ENCORE is without knowledge or information sufficient to form a belief as to the truth of the allegation that the debts bought by MRC are consumer debts as Defendant is without knowledge or information sufficient to form a belief as to the purpose of same debts. In further answering the allegations contained within Paragraph 6 of Plaintiff's Complaint, ENCORE states that the use of the words "bad," "large amounts," and "small fraction" are vague and ambiguous, and as a result, Defendant ENCORE is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained within Paragraph 6 of Plaintiff's Complaint.**

7. Defendant MRC is a "debt collector" as defined in the FDCPA.

**ANSWER: Defendant ENCORE denies the allegations contained within Paragraph 7 of Plaintiff's Complaint.**

8. Defendant MRC does business in Illinois.

**ANSWER: Defendant ENCORE denies the allegations contained within Paragraph 8 of Plaintiff's Complaint.**

9. Defendant MCM is a collection agency and collects the bad debts purchased by MRC.

**ANSWER: Defendant ENCORE admits that MCM is a collection agency and that MCM collects debts purchased by MRC. In further answering, Defendant ENCORE states that Plaintiff's characterization of the debts purchased by MRC as "bad" is vague and ambiguous and therefore, ENCORE is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained within Paragraph 9 of Plaintiff's Complaint.**

10. Defendant MCM is a "debt collector" as defined in the FDCPA.

**ANSWER: ENCORE admits that Defendant MCM may be considered a debt collector, as defined by the FDCPA, for some purposes. Defendant ENCORE further states that it is without knowledge or information sufficient to form a belief as to the truth of the allegation that MCM was acting as a debt collector with respect to the Plaintiff, because it is without sufficient knowledge or information to form a belief as to the purpose of Plaintiff's debt.**

11. MCM and MRC are under common ownership. Both are subsidiaries of Encore, a publicly traded Delaware corporation, with offices at 5775 Roscoe Court, San Diego, CA 92123.

**ANSWER: Defendant ENCORE admits that MCM and MRC are under common ownership and that both are subsidiaries of Encore. Defendant admits that it is a publicly**

**traded Delaware corporation with offices located in San Diego, California. Defendant ENCORE denies the remaining allegations contained within Paragraph 11 of Plaintiff's Complaint.**

12. Encore participated in the debt collection activities complained of and is a "debt collector" as defined in the FDCPA.

**ANSWER: Defendant ENCORE denies the allegations contained within Paragraph 12 of Plaintiff's Complaint.**

**PRIVACY PROTECTIONS IN FDCPA**

13. The FDCPA contains a number of provisions that prevent debt collectors from informing third parties that a given individual owes a debt. "[T]he FDCPA generally protects the consumer's privacy by limiting debt collector communications about personal affairs to third parties . . . ." FTC Official Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097 (Dec. 13, 1988), at 50103.

**ANSWER: Defendant ENCORE admits that Plaintiff purports to recite the FTC Official Staff Commentary on the Fair Debt Collection Practices Act, but denies Plaintiff's characterization of the Act.**

14. 15 U.S.C. §1692c(b) contains a general prohibition against debt collectors communicating with third parties:

> **(b) Communication with third parties--Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.**

Section 1692b deals with locating debtors who cannot be found.

**ANSWER: Defendant ENCORE admits only that within Paragraph 14 of his Complaint, Plaintiff purports to recite §1692c(b) and characterize that provision.**

15. Second, 15 U.S.C. §1692d(3) and (4) defines as "harassment" and a violation of the FDCPA "**[t]he publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title**" and the "**advertisement for sale of any debt to**

**coerce payment of the debt."** Section 1681a(f) is the Fair Credit Reporting Act definition of consumer reporting agency. Section 168lb(3) is a Fair Credit Reporting Act provision dealing with use of consumer reports.

**ANSWER: Defendant ENCORE admits only that within Paragraph 15 of his Complaint, Plaintiff purports to recite §1692d(3) and (4). Defendant denies that Plaintiff accurately characterizes or paraphrases these sections.**

16. The Federal Trade Commission has interpreted these provisions to bar publication to one or more persons: "Debt collectors may not exchange lists of consumers who allegedly refuse to pay their debts. . . A debt collector may not distribute a list of alleged debtors to its creditor subscribers." FTC Official Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097 (Dec. 13, 1988), at 50105.

**ANSWER: Defendant ENCORE admits only that within Paragraph 16 of his Complaint, Plaintiff purports to quote FTC Official Staff Commentary.**

17. Section 1692e provides:

> **§ 1692e. False or misleading representations [Section 807 of P.L.]**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**
>
> **(5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**
>
> **(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

**ANSWER: Defendant ENCORE admits only that Plaintiff recites a portion of § 1692e.**

18. Section 1692f prohibits a debt collector from communicating with consumers in a manner that allows third parties to discern the consumers owe money:

> **. . . (7) Communicating with a consumer regarding a debt by post card.**
>
> **(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business. . .**

**ANSWER: Defendant ENCORE admits only that Plaintiff recites a portion of § 1692f, and denies the remaining allegations contained within Paragraph 18 of Plaintiff's Complaint.**

**FACTS RELATING TO PLAINTIFF**

19. On or about November 14, 2004, defendant MCM sent plaintiff a collection letter consisting of three pages and attached as Exhibit A.

**ANSWER: Defendant ENCORE admits that Exhibit A purports to be a two page collection letter that MCM sent to the Plaintiff on or about November 14, 2004. Defendant ENCORE denies that Defendant MCM sent Exhibit A to the extent that Exhibit A has been altered or revised from its original condition. Defendant ENCORE admits that a privacy notice may have been included with Exhibit A, and in further answering the allegations contained within Paragraph 19 of Plaintiff's Complaint, Defendant states that it is without knowledge or information sufficient to form a belief as to the truth of the allegation that the privacy notice attached to Plaintiff's Complaint is the actual privacy notice that might have been sent with Exhibit A.**

20. Exhibit A was sent on behalf of MRC, the owner of the debt.

**ANSWER: Defendant ENCORE admits that MRC was the owner of the debt referred to in Exhibit A. ENCORE further admits that MCM sent Exhibit A, only to the extent that it has been unaltered from its original version, as the servicer of Plaintiff's debt. Defendant ENCORE denies any remaining allegations contained within Paragraph 20 of Plaintiff's Complaint.**

21. Exhibit A included a "privacy notice of financial information" ("privacy notice") prepared by Encore.

**ANSWER: Defendant ENCORE admits that Exhibit A may have included a "privacy notice of financial information." Defendant admits that the privacy notice attached to Plaintiff's Complaint purports to have been prepared by MCM Capital Group, Inc., n/k/a Encore Capital Group, Inc. In further answering the allegations contained within Paragraph 21 of Plaintiff's Complaint, Defendant states that it is without knowledge or information sufficient to form a belief as to the truth of the allegation that the privacy notice attached to the Plaintiff's Complaint is the actual notice that might have been included with Exhibit A.**

22. The letter sought to collect an alleged debt incurred for personal, family or household use.

**ANSWER: Defendant ENCORE is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 22 of Plaintiff's Complaint.**

23. Exhibit A is a form letter.

**ANSWER: Defendant states that Plaintiff's use of the word "form" is vague and ambiguous and ENCORE therefore is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 23 of Plaintiff's Complaint, though, ENCORE admits that MCM sends collection letters similar to Exhibit A.**

24. The "privacy notice" is also a form.

**ANSWER: Defendant states that Plaintiff's use of the word "form" is vague and ambiguous and ENCORE therefore is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 24 of Plaintiff's Complaint, though, ENCORE admits that MCM sends letters with a "Privacy Notice." In further answering the allegations contained within Paragraph 24 of Plaintiff's Complaint, Defendant states that it is without knowledge or information sufficient to form a belief as to the truth of the allegation that the privacy notice attached to the Plaintiff's Complaint is the actual notice that might have been included with Exhibit A.**

**FDCPA VIOLATIONS RESULTING FROM DEFENDANTS' PRIVACY NOTICE**

25. The privacy notice states that "In connection with collecting on, or servicing, your account, we collect nonpublic personal information about you from the following sources": (a) "applications or other forms"; (b) "your account transactions with us, our affiliates or others including, without limitation, the originating creditor"; (c) from "consumer reporting agencies"; and (d) from "other nonaffiliated third parties".

**ANSWER: Defendant ENCORE admits that the privacy notice attached to Plaintiff's Complaint contains, in part, the language quoted. In further answering the allegations contained within Paragraph 25 of Plaintiff's Complaint, Defendant states that it is without knowledge or information sufficient to form a belief as to the truth of the allegation that the privacy notice attached to the Plaintiff's Complaint is the actual notice that might have been included with Exhibit A.**

26. All of this information is integrally related to debt collection.

**ANSWER: Defendant ENCORE denies the allegations contained within Paragraph 26 of Plaintiff's Complaint.**

27. The privacy notice then states: "**What Information Do We Disclose?** We reserve the right to disclose all of the nonpublic personal information that we collect, as

described above, as it pertains to our customers or former customers. **To Whom Do We Disclose Information?** We may disclose (whether you are a customer or former customer) nonpublic personal information about you to the following types of third parties: **o** Financial service providers, such as mortgage bankers or other lenders; **o** Non-financial companies, such as direct marketers or retailers."

**ANSWER: Defendant ENCORE admits that the privacy notice attached to Plaintiff's Complaint contains, in part, the language quoted. In further answering the allegations contained within Paragraph 27 of Plaintiff's Complaint, Defendant states that it is without knowledge or information sufficient to form a belief as to the truth of the allegation that the privacy notice attached to the Plaintiff's Complaint is the actual notice that might have been included with Exhibit A.**

28. Many of the uses listed are prohibited by the FDCPA, in that they are with persons other than "the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." Actual disclosures of that nature would violate 15 U.S.C. §1692c, and the statement that defendants would make such disclosures, or has the right to do so, violates 15 U.S.C. §1692e.

**ANSWER: Defendant ENCORE denies that it violated the FDCPA and denies that the Plaintiff accurately characterizes the privacy notice. In further answering the allegations contained within Paragraph 28 of Plaintiff's Complaint, Defendant states that it is without knowledge or information sufficient to form a belief as to the truth of the allegation that the privacy notice attached to the Plaintiff's Complaint is the actual notice that might have been included with Exhibit A.**

29. In addition, several of the listed uses amount to the publication of lists of persons who have allegedly refused to pay debts, and either still have not paid or were ultimately induced to pay. The actual publication of such lists would violate 15 U.S.C. §1692d, and the statement that defendants will do so or have the right to do so violates 15 U.S.C. §1692e.

**ANSWER: Defendant ENCORE denies that it violated the FDCPA and denies that the Plaintiff accurately characterizes the privacy notice. In further answering the allegations contained within Paragraph 29 of Plaintiff's Complaint, Defendant states that it is without knowledge or information sufficient to form a belief as to the truth of the allegation that the privacy notice attached to the Plaintiff's Complaint is the actual notice that might have been included with Exhibit A.**

30. Debt collectors are known to sell lists of persons who have not paid their debts to issuers of subprime credit cards and mortgage loans, who offer to issue a credit card or make a mortgage loan if the consumer will put some or all of the unpaid debt on the credit card or mortgage loan.

**ANSWER: Defendant ENCORE is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 30 of Plaintiff's Complaint.**

31. Defendants engage in such practices. Defendants state in their SEC filings:

> *Account Balance Transfer.* We may transfer to our credit card partner accounts with a low expected value or those for which collection efforts have failed. The credit card partner may offer the debtor the opportunity to put the balance on a credit card. If the account is transferred we receive an agreed upon payment. We retain the ownership of and the ability to collect on the charged-off accounts that the card issuer has solicited until a successful balance-transfer has occurred.

Report on SEC Form 10-K of Encore Capital Group, Inc., for 12 months ending Dec. 31, 2003.

**ANSWER: Defendant ENCORE states that the SEC filings speak for themselves. Defendant denies it violates the FDCPA.**

32. Prospective lenders are not among the parties to whom a debt maybe disclosed under 15 U.S.C. §1692c.

**ANSWER: Defendant ENCORE states that the allegations contained within Paragraph 32 of Plaintiff's Complaint consist wholly of legal conclusions to which no response is required. In further answering Paragraph 32, Defendant states that to the extent that a response in necessary, Defendant denies the allegations contained within Paragraph 32 of Plaintiff's Complaint.**

33. Defendants' privacy notice then states that if the consumer would "prefer that we not disclose nonpublic personal information about you to nonaffiliated third parties," the consumer must so request. This is a misstatement of the consumer's rights under 15 U.S.C. §1692c, which requires that the consumer grant express permission directly to the debt collector before the debt may be disclosed to anyone other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

**ANSWER: Defendant ENCORE admits only that the privacy notice attached to Plaintiff's Complaint states: "If you prefer that we not disclose nonpublic personal information about you to non-affiliated third parties, you may opt out of those disclosures, that is, you may direct us not to make those disclosures (other than those disclosures permitted by law)." In further answering the allegations contained within Paragraph 33 of Plaintiff's Complaint, Defendant states that it is without knowledge or information sufficient to form a belief as to the truth of the allegation that the privacy notice attached to the Plaintiff's Complaint is the actual notice that might have been included with Exhibit A.**

**Defendant denies the remaining allegations contained within Paragraph 33 of Plaintiff's Complaint.**

34. Finally, the inclusion of erroneous statements in a debt collection letter that information about the debtor can or will be disclosed to third parties amounts to an implicit threat that the debtor's privacy will be invaded if the debt is not paid.

ANSWER: **Defendant denies that the privacy notice constitutes a debt collection letter. In further answering the allegations contained within Paragraph 34 of Plaintiff's Complaint, Defendant ENCORE denies that Plaintiff accurately characterizes the privacy notice and accordingly denies the allegations contained within Paragraph 34 of Plaintiff's Complaint. Furthermore, Defendant states that it is without knowledge or information sufficient to form a belief as to the truth of the allegation that the privacy notice attached to the Plaintiff's Complaint is the actual notice that might have been included with Exhibit A.**

35. Similar statements were held to violate 15 U.S.C. §1692e in Stewart v. Asset Acceptance LLC, 1:04-cv-1213-LJM-VSS (S.D.Ind., Nov. 19, 2004).

ANSWER: **Defendant ENCORE denies the allegations contained within Paragraph 35 of Plaintiff's Complaint. In further answering Paragraph 35, Defendant states that Plaintiff completely misstates and misrepresents the cases cited therein.**

## CLASS ALLEGATIONS

36. Plaintiff brings this action on behalf of a class.

ANSWER: **Defendant ENCORE admits that Plaintiff purports to bring this action on behalf of a class, but denies that a class exists or that one should be certified.**

37. The class consists of (a) all natural persons with Illinois addresses (b) to whom any of the defendants sent the "privacy notice," (c) on or after a date one year prior to the filing of this action, and (d) on or before a date 20 days after the filing of this action.

ANSWER: **Defendant ENCORE admits that Plaintiff purports to bring this action on behalf of a class, but denies that a class exists or that one should be certified. Defendant denies any remaining allegations contained within Paragraph 37 of Plaintiff's Complaint.**

38. The class members are so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the class.

**ANSWER: Defendant ENCORE admits that Plaintiff purports to bring this action on behalf of a class, but denies that a class exists or that one should be certified. Defendant denies any remaining allegations contained within Paragraph 38 of Plaintiff's Complaint.**

39. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the "privacy notice" violates the FDCPA.

**ANSWER: Defendant ENCORE admits that Plaintiff purports to bring this action on behalf of a class, but denies that a class exists or that one should be certified. Defendant denies any remaining allegations contained within Paragraph 39 of Plaintiff's Complaint.**

40. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

**ANSWER: Defendant ENCORE admits that Plaintiff purports to bring this action on behalf of a class, but denies that a class exists or that one should be certified. Defendant denies any remaining allegations contained within Paragraph 40 of Plaintiff's Complaint.**

41. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

**ANSWER: Defendant ENCORE admits that Plaintiff purports to bring this action on behalf of a class, but denies that a class exists or that one should be certified. In further answering the allegations contained within Paragraph 41 of Plaintiff's Complaint, Defendant states that it is without sufficient knowledge to form a belief as to the truth of the allegation that Plaintiff will fairly and accurately represent the purported class members and therefore neither admits nor denies same. Defendant admits that Plaintiff's Counsel is experienced in class actions and FDCPA litigation, but further states that it is without knowledge or information sufficient to form a belief as to the truth of the allegation that same is adequate counsel to litigate the present Plaintiff's purported class action. Defendant denies any remaining allegations contained within Paragraph 41 of Plaintiff's Complaint.**

42. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible. Many debtors may not realize that their rights are violated.

**ANSWER: Defendant ENCORE admits that Plaintiff purports to bring this action on behalf of a class, but denies that a class exists or that one should be certified. Defendant denies any remaining allegations contained within Paragraph 42 of Plaintiff's Complaint.**

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

For its First Affirmative Defense, Defendant ENCORE states that any violation of the FDCPA, which Defendant ENCORE denies occurred, was not intentional and would have resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.

**SECOND AFFIRMATIVE DEFENSE**

For its Second Affirmative Defense, Defendant ENCORE states that Plaintiffs fail to state a cause of action under § 1692 of the FDCPA, because the privacy notice at issue does not contain false or misleading statements in violation of § 1692e.

**THIRD AFFIRMATIVE DEFENSE**

For its Third Affirmative Defense, Defendant ENCORE denies that it violated the FDCPA, due to the fact that Defendant ENCORE did not engage in any debt collection activities.

**FOURTH AFFIRMATIVE DEFENSE**

For its Fourth Affirmative Defense, Defendant ENCORE states that Plaintiff fails to state a cause of action under § 1692 of the FDCPA, because it is not a debt collector.

**FIFTH AFFIRMATIVE DEFENSE**

For its Fifth Affirmative Defense, Defendant ENCORE states that it did not commit any actionable violations of the FDCPA.

**SIXTH AFFIRMATIVE DEFENSE**

For its Sixth Affirmative Defense, Defendant ENCORE asserts that upon information and belief, arbitration is the more appropriate venue for Plaintiff's claims to be brought as Defendant may possess certain arbitration rights based on contracts entered into by the Plaintiff.

WHEREFORE, Defendant, ENCORE CAPITAL GROUP, INC., respectfully requests that this court enter judgment in its favor and against Plaintiff on all claims asserted by Plaintiff and for such other relief as this court deems just and appropriate.

**ENCORE CAPITAL GROUP, INC., formerly MCM CAPITAL GROUP, INC.**

By: ______________________________
One of Defendant's Attorneys

David M. Schultz, Esq.
Jennifer M. Hanna, Esq.
HINSHAW & CULBERTSON LLP
222 North LaSalle Street
Suite 300
Chicago, Illinois 60601-1081
(312) 704-3000

# APPENDIX E

8-K 1 form8k_maindocument.htm MAIN DOCUMENT

**SECURITIES AND EXCHANGE COMMISSION**
**WASHINGTON, D.C. 20549**

**FORM 8-K**

**CURRENT REPORT**
**Pursuant to Section 13 or 15(d)**
**of the Securities Exchange Act of 1934**

Date of Report (Date of earliest event reported): March 3, 2005

**Encore Capital Group, Inc.**
(Exact Name of Registrant as Specified in its Charter)

| **Delaware** | **000-26489** | **48-1090909** |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (Commission File Number) | (I.R.S Employer Identification No.) |

**8875 Aero Drive, Suite 200**
**San Diego, California 92123**
(Address of Principal Executive Offices) (Zip Code)

**(877) 445-4581**
(Registrant's Telephone Number, Including Area Code)

**Item 2.02. Results of Operations and Financial Condition**

On March 3, 2005, the Company issued a press release announcing its unaudited financial results for the fourth quarter ended December 31, 2004. A copy of the press release is attached to this Current Report on Form 8-K as Exhibit 99.1 and is incorporated herein solely for purposes of Item 2.02.

The press release attached to this Current Report on Form 8-K as Exhibit 99.1 contains financial measures for income before taxes, net income, fully diluted earnings per share and cash flow from operations excluding one-time benefit that are not calculated in accordance with generally accepted accounting principles in the United States ("GAAP"). The Company has provided a reconciliation in the press release attached to this Current Report on Form 8-K as Exhibit 99.1 of the non-GAAP financial measures for income before taxes, net income, fully diluted earnings per share and cash flow from operations excluding one-time benefit to GAAP income before taxes, net income, fully diluted earnings per share and cash flow from operations.

Management believes that these non-GAAP financial measures provide useful information to investors about

the Company's results of operations because the elimination of one-time benefit that is included in the GAAP financial measures results in enhanced comparability of certain key financial results between the periods presented.

The information provided in this Current Report on Form 8-K pursuant to Item 2.02, including the exhibit, shall not be deemed "filed" for the purposes of Section 18 of the Securities Exchange Act of 1934 or otherwise subject to the liabilities under that Section. Furthermore, the information provided in this Current Report on Form 8-K pursuant to Item 2.02, including the exhibit, shall not be deemed to be incorporated by reference into the filings of Encore Capital Group, Inc. under the Securities Act of 1933.

**Item 9.01 Financial Statements and Exhibits**

(c) Exhibits

3.1 Bylaws, as amended.

99.1 Press release dated March 3, 2005.



## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

**ENCORE CAPITAL GROUP, INC.**

Date: March 3, 2005

By /s/ Barry R. Barkley

Barry R. Barkley
Executive Vice President,
Chief Financial Officer and Treasurer



## EXHIBIT INDEX

| Exhibit | Description |
|---|---|
| 3.1 | Bylaws, as amended. |

99.1 Press release dated March 3, 2005.

EX-99.3 exhibit_991.htm BYLAWS AND PRESS RELEASE

**EXHIBIT 99.1**

**Encore Reports a 50% Increase in Fully Diluted Earnings Per Share in the 4th Quarter of 2004**

**4th Quarter Highlights:**

- **Collections increase 12%**
- **Revenues increase 46%**
- **Net income increases 48%**
- **Earnings per fully diluted share increase 50%**
- **Pre-tax cash flows from operations increase 64%**

**San Diego – (Business Wire) – March 3, 2005 –** Encore Capital Group, Inc (Nasdaq: ECPG), a leading accounts receivable management firm, today reported consolidated financial results for the fourth quarter and full year ended December 31, 2004.

**For the fourth quarter of 2004:**

- Gross collections were $53 4 million, a 12% increase over the $47 7 million in the same period of the prior year
- Total revenues were $46 0 million, a 46% increase over the $31 4 million in the same period of the prior year
- Net income was $5 7 million compared with $3 8 million in the same period of the prior year, a 48% increase
- Earnings per fully diluted share were $0 24, a 50% increase over the $0 16 in the same period of the prior year Earnings per fully diluted share in the fourth quarter of 2004 were up 26% over the $0 19 earned in the same period of the prior year excluding the one-time other charge

**For the full year 2004:**

- Gross collections were $234 7 million, a 23% increase over the $190 5 million in 2003
- Total revenues were $178 5 million, a 52% increase over the $117 5 million in 2003
- Net income was $23 2 million, a 26% increase over $18 4 million in 2003
- Earnings per fully diluted share were $0 99 a 12% increase over $0 88 in 2003 Earnings per fully diluted share in 2004 were up 41% over the $0 70 earned in 2003 excluding the one-time benefit and other charge

---

"Our fourth quarter performance capped a very strong year for Encore, as we generated record levels of collections, revenues, and earnings per share," commented Carl C. Gregory, III, Vice Chairman and CEO of Encore Capital Group, Inc "We were able to achieve this strong growth despite scaling back on our purchasing of new portfolios throughout much of 2004 in response to less attractive pricing in the marketplace Total purchases during 2004 were $103 4 million compared to $89 8 million in 2003 We continue to effectively develop alternative collection channels, such as legal and agency outsourcing, which increase our ability to penetrate our portfolios further For the full year, our collections through alternative channels, other than sales, more than doubled, and we expect that our continued development of these channels will be valuable in enhancing the productivity of our collection efforts and the profitability of our operations"

**Fourth Quarter Financial Highlights**

Revenue recognized, as a percentage of collections, was 86% in the fourth quarter of 2004, compared to 66% in the fourth quarter of 2003 The increase in the percentage of revenue recognized in the fourth quarter of 2004 is primarily attributable to high levels of zero-basis income, deeper penetration of more tenured portfolios, and a larger portion of portfolio purchases occurring later in the quarter

Total operating expenses for the fourth quarter of 2004 were $27 9 million, compared with $19 8 million in the fourth quarter of 2003 The increase in total operating expenses is largely volume driven and reflects growth in the utilization of the legal collection channel and the expansion of the agency outsourcing collection channel. General and administrative expenses included approximately $0 8 million related to Sarbanes-Oxley compliance efforts and $0 1 million in SEC reporting fees and legal fees related to the Company's secondary offering completed in January 2005.

Pretax cash flows from operations for the fourth quarter of 2004 were $14 5 million, an increase of 64% over the $8 9 million generated in the same period of 2003 (Adjustments to arrive at pre-tax cash flow from operations consisted of income tax payments of $1 4 million in the fourth quarter of 2004 and $0 9 million in the fourth quarter of 2003 ) The Company exhausted its Federal net operating loss carry forward in the fourth quarter of 2003 and began to make income tax payments at the statutory rates in 2004.

The Company spent $46 1 million to purchase approximately $1 2 billion in face value of portfolios during the fourth quarter of 2004, a blended purchase price of 3 86% of face value 96% of the portfolios purchased in the fourth quarter of 2004 were credit card receivables

"The current purchasing market remains highly competitive," said Mr. Gregory "However, we believe there are opportunities to purchase portfolios that can yield acceptable returns. During the fourth quarter, we spent approximately $46 1 million on portfolios that we expect to be profitable for the Company, though to a lesser degree than portfolios purchased in prior years"

---

**Outlook**

Commenting on the outlook for the Company, Mr. Gregory said, "We believe that 2005 will be another year of strong earnings growth, driven primarily by disciplined expense control and lower interest costs resulting from our new revolving credit facility We are intensely focused on optimizing our operating efficiency by leveraging our sophisticated analytics to assign accounts to the channel that can collect them in the most profitable manner Our continual focus on improving the efficiency of our operations serves the Company particularly well during periods when conditions in the purchasing market present challenges to driving top-line growth."

"Our strong performance over the past few years has significantly improved our financial strength and flexibility We are now in a position to begin pursuing acquisition opportunities that can expand our footprint into additional asset classes or collection channels."

The Company also provided the following information to assist the investment community:

- Due to rising purchase prices for portfolios, an increase in the amount invested in portfolio purchases does not necessarily result in a corresponding increase in collections This could also result in a lower revenue recognition percentage for the portfolios purchased under this scenario.
- As a result of the replacement of its Secured Credit Facility with the new revolving credit facility, the Company anticipates that contingent interest expense will decline beginning in 2005. The Company has forecasted that its contingent interest expense could be approximately 65% of 2004 levels in 2005; 35% of 2004 levels in 2006; and subsequent lower levels beyond 2006. Contingent interest expense amounted to $32 3 million for the year 2004 which represents $0 81 per fully diluted share, net of taxes

**GAAP Reconciliation**

The table included in the attached supplemental financial information is a reconciliation of generally accepted accounting principles in the United States of America ("GAAP") income before taxes, net income, fully diluted earnings per share and cash flows from operations to income before taxes, net income, fully diluted earnings per share, and cash flows from operations excluding one-time benefits, and the effects of income taxes with respect to cash flows from operations for the periods presented We believe that these non-GAAP financial measures provide useful information to investors about our results of operations because the elimination of one-time benefits that are included in the GAAP financial measures results in enhanced comparability of certain key financial results between the periods presented.

*Conference Call and Webcast*

The Company will hold a conference call today at 2:00 P M Pacific time / 5:00 P M Eastern time to discuss the fourth quarter results Members of the public are invited to listen to the live conference call via the Internet.

---

To hear the presentation and to access a slide presentation containing financial information that will be discussed in the conference call, log on at the Investor Relations page of the Company's web site at *www.encorecapitalgroup.com*. For those who cannot listen to the live broadcast, a replay of the conference call will be available shortly after the call at the same location

*About Encore Capital Group, Inc.*

Encore Capital Group, Inc is a systems-driven purchaser and manager of charged-off consumer receivables portfolios More information on the company can be found at www.encorecapitalgroup.com

*Forward Looking Statements*

*The statements in this press release that are not historical facts, including, most importantly, those statements preceded by, or that include, the words "may," "believes," "projects," "expects," "anticipates" or the negation thereof, or similar expressions, constitute "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995 (the "Reform Act"). These statements may include, but are not limited to, projections of future contingent interest expense, purchase volumes, revenues, income or loss (including our expectations regarding the current environment for portfolio purchases and its effect on revenue recognition rates and profitability): estimates of capital expenditures; plans for future operations, products or services; and financing needs or plans, as well as assumptions relating to those matters For all "forward-looking statements," the Company claims the protection of the safe harbor for forward-looking statements contained in the Reform Act Such forward-looking statements involve risks, uncertainties and other factors which may cause actual results, performance or achievements of the Company and our subsidiaries to be materially different from any future results, performance or achievements expressed or implied by such forward-looking statements Factors that could affect the Company's results and cause them to materially differ from those contained in the forward-looking statements include: the Company's ability to purchase receivables portfolios on acceptable terms and in sufficient quantities; the Company's ability to acquire and collect on portfolios consisting of new types of receivables; the Company's ability to recover sufficient amounts on or with respect to receivables to fund operations; the Company's ability to successfully execute acquisitions; the Company's continued servicing of receivables in its third party financing transactions; the Company's ability to hire and retain qualified personnel to recover on its receivables efficiently, changes in, or failure to comply with, government regulations; the costs, uncertainties and other effects of legal and administrative proceedings; and risk factors and cautionary statements made in the Company's Annual Report on Form 10-K as of and for the year ended December 31, 2004 Forward-looking statements speak only as of the date the statement was made. They are inherently subject to risks and uncertainties, some of which the Company cannot predict or quantify Future events and actual results could differ materially from the forward-looking statements. The Company will not undertake and specifically declines any obligation to publicly release the result of any revisions to any forward-looking statements to reflect events or circumstances after the date of such statements or to reflect the occurrence of anticipated or unanticipated events, whether as the result of new information, future events or for any other reason. In addition, it is the Company's policy generally not to make any specific projections as to future earnings, and the Company does not endorse any projections regarding future performance that may be made by third parties*

*CONTACT:*

**Encore Capital Group, Inc. (Shareholders/Analysts)**
Carl C Gregory, III, 858-309-6961
carl gregory@encorecapitalgroup com
or
**Financial Relations Board (Press)**
Tony Rossi, 310-407-6563 (Investor Relations)
trossi@financialrelationsboard com

## ENCORE CAPITAL GROUP, INC.

### Consolidated Statements of Financial Condition

(In Thousands, Except Par Value Amounts)

| | December 31, 2004 | December 31, 2003 |
|---|---|---|
| **Assets** | | |
| Cash and cash equivalents | $ 49,731 | $ 38,612 |
| Restricted cash | 3,432 | 842 |
| Investment in receivable portfolios, net | 137,963 | 89,136 |
| Investment in retained interest | - | 1,231 |
| Property and equipment, net | 3,360 | 2,786 |
| Deferred tax asset, net | 361 | 1,358 |
| Other assets | 6,295 | 4,320 |
| Total assets | $ 201,142 | $ 138,285 |
| **Liabilities and stockholders' equity** | | |
| Liabilities | | |
| Accounts payable and accrued liabilities | $ 17,418 | $ 11,644 |
| Accrued profit sharing arrangement | 20,881 | 12,749 |
| Income tax payable | - | 883 |
| Notes payable and other borrowings | 66,567 | 41,178 |
| Capital lease obligations | 261 | 460 |
| Total liabilities | 105,127 | 66,914 |
| Commitments and contingencies | | |
| Stockholders' equity | | |
| Convertible preferred stock, $ 01 par value, 5,000 shares authorized, and no shares issued and outstanding | - | - |
| Common stock, $ 01 par value, 50,000 shares authorized, and 22,166 shares and 22,003 shares issued and outstanding as of December 31, 2004 and 2003, respectively | 222 | 220 |
| Additional paid-in capital | 66,788 | 65,387 |
| Accumulated earnings | 28,834 | 5,658 |
| Accumulated other comprehensive income | 171 | 106 |
| Total stockholders' equity | 96,015 | 71,371 |
| Total liabilities and stockholders' equity | $ 201,142 | $ 138,285 |

## ENCORE CAPITAL GROUP, INC.

### Consolidated Statements of Operations

(In Thousands, Except Per Share Amounts)

| | Years ended December 31, | | |
|---|---|---|---|
| | 2004 | 2003 | 2002 |
| Revenues | | | |
| Revenue from receivable portfolios | $ 175,296 | $ 115,575 | $ 80,961 |
| Revenue from retained interest | 2,487 | 307 | 5,707 |
| Servicing fees and other related revenue | 692 | 1,620 | 3,712 |

| | | | |
|---|---|---|---|
| Total revenues | 178,475 | 117,502 | 90,380 |
| Operating expenses | | | |
| Salaries and employee benefits | 47,193 | 39,286 | 35,137 |
| Other operating expenses | 13,645 | 11,335 | 7,934 |
| Cost of legal collections | 28,202 | 15,827 | 11,028 |
| Collection agency commissions | 4,786 | - | - |
| General and administrative expenses | 9,212 | 6,509 | 6,314 |
| Provision for portfolio losses | - | - | 1,049 |
| Depreciation and amortization | 1,951 | 2,023 | 2,453 |
| Total operating expenses | 104,989 | 74,980 | 63,915 |
| Income before other income (expense) and income taxes | 73,486 | 42,522 | 26,465 |
| Other income (expense) | | | |
| Interest expense | (35,330) | (20,479) | (18,592) |
| Other income | 690 | 7,380 | 213 |
| Total other expense | (34,640) | (13,099) | (18,379) |
| Income before income taxes | 38,846 | 29,423 | 8,086 |
| (Provision for) benefit from income taxes | (15,670) | (11,003) | 5,703 |
| Net income | 23,176 | 18,420 | 13,789 |
| Preferred stock dividends | - | (374) | (440) |
| Net income available to common stockholders | $ 23,176 | $ 18,046 | $ 13,349 |
| Weighted average shares outstanding | 22,072 | 10,965 | 7,339 |
| Incremental shares from assumed conversion of warrants, options, and preferred stock | 1,409 | 9,908 | 9,120 |
| Adjusted weighted average shares outstanding | 23,481 | 20,873 | 16,459 |
| Earnings per share - Basic | $ 1.05 | $ 1.65 | $ 1.82 |
| Earnings per share - Diluted | $ 0.99 | $ 0.88 | $ 0.84 |

## ENCORE CAPITAL GROUP, INC.

**Consolidated Statements of Stockholders' Equity and Comprehensive Income**

(In Thousands)

| | Common Stock | | Preferred Stock | | Additional Paid-In | Accumulated Earnings | Accumulated Other Comprehensive | |
|---|---|---|---|---|---|---|---|---|
| | Shares | Par | Shares | Cost | Capital | (Deficit) | Income | Total |
| **Balance at December 31, 2001** | 7,161 | $ 72 | - | $ - | $ 22,111 | $(25,737) | $ 1,196 | $ (2,358) |
| Net income | - | - | - | - | - | 13,789 | - | 13,789 |
| Other comprehensive income: unrealized gain on non-qualified deferred compensation plan assets | - | - | - | - | - | - | 39 | 39 |
| Other comprehensive loss: decrease in unrealized gain on investment retained interest, net of tax | - | - | - | - | - | - | (868) | (868) |
| Comprehensive income | - | - | - | - | - | - | - | 12,960 |
| Net proceeds from issuance of Preferred Stock | - | - | 1,000 | 10 | 4,578 | - | - | 4,588 |
| Preferred dividends | - | - | - | - | - | (440) | - | (440) |
| Forgiveness of debt, net | - | - | - | - | 4,665 | - | - | 4.665 |
| Issuance of common stock warrants | - | - | - | - | 125 | - | - | 125 |
| Exercise of common stock warrants | 250 | 2 | - | - | - | - | - | 2 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Balance at December 31, 2002** | 7,411 | 74 | 1,000 | 10 | 31,479 | (12,388) | 367 | 19,542 |
| Net income | - | - | - | - | - | 18,420 | - | 18,420 |
| Other comprehensive income: unrealized gain on non-qualified deferred compensation plan assets | - | - | - | - | - | - | 46 | 46 |
| Other comprehensive loss: decrease in unrealized gain on investment retained interest, net of tax | - | - | - | - | - | - | (307) | (307) |
| Comprehensive income | - | - | - | - | - | - | - | 18,159 |
| Preferred dividends | - | - | - | - | - | (374) | - | (374) |
| Preferred stock converted to common stock | 10,000 | 100 | (1,000) | (10) | (90) | - | - | - |
| Net proceeds from issuance of common stock | 3,000 | 30 | - | - | 30,101 | - | - | 30,131 |
| Exercise of common stock warrants | 957 | 10 | - | - | 615 | - | - | 625 |
| Exercise of stock options | 635 | 6 | - | - | 608 | - | - | 614 |
| Excess tax benefits related to stock options | - | - | - | - | 2,546 | - | - | 2,546 |
| Amortization of stock options issued at below market | - | - | - | - | 128 | - | - | 128 |
| **Balance at December 31, 2003** | 22,003 | 220 | - | - | 65,387 | 5,658 | 106 | 71,371 |
| Net income | - | - | - | - | - | 23,176 | - | 23,176 |
| Other comprehensive income: unrealized gain on non-qualified deferred compensation plan assets | - | - | - | - | - | - | 86 | 86 |
| Other comprehensive loss: decrease in unrealized gain on investment retained interest, net of tax | - | - | - | - | - | - | (21) | (21) |
| Comprehensive income | - | - | - | - | - | - | - | 23,241 |
| Exercise of stock options | 163 | 2 | - | - | 167 | - | - | 169 |
| Excess tax benefits related to stock options | - | - | - | - | 1,125 | - | - | 1,125 |
| Amortization of stock options issued at below market | - | - | - | - | 109 | - | - | 109 |
| **Balance at December 31, 2004** | 22,166 | $ 222 | - | $ - | $ 66,788 | $ 28,834 | $ 171 | $ 96,015 |

**ENCORE CAPITAL GROUP, INC.**
**Consolidated Statements of Cash Flows**
(In Thousands)

| | Years ended December 31, | | |
|---|---|---|---|
| | **2004** | **2003** | **2002** |
| **Operating activities** | | | |
| Gross collections from investment in receivable portfolios | $ 228,657 | $178,950 | $ 124,388 |
| Gross collections from investment in retained interest | 3,682 | 6,819 | 13,929 |
| Gross collections for third parties | 2,337 | 4,750 | 10,491 |
| Total gross collections | 234,676 | 190,519 | 148,808 |
| Proceeds from litigation settlement | - | 11,100 | - |
| Less: | | | |
| Amounts collected on behalf of third parties | (2,337) | (4,750) | (10,491) |
| Amounts applied to principal on receivable portfolios | (53,362) | (63,374) | (43,423) |
| Amounts applied to principal of securitization 98-1 | (1,195) | (6,512) | (7,808) |
| Litigation settlement proceeds applied to principal of receivable portfolios | - | (692) | - |
| Legal and other costs related to litigation settlement | - | (3,198) | - |
| Servicing fees | 692 | 1,620 | 3,712 |
| Operating Expenses | | | |
| Salaries and employee benefits | (44,526) | (38,431) | (32,909) |
| Other operating expenses | (12,083) | (11,044) | (7,803) |
| Cost of legal collections | (28,202) | (15,827) | (11,028) |
| Collection agency commissions | (4,786) | - | - |

| | | | |
|---|---|---|---|
| General and administrative | (8,873) | (6,303) | (6,707) |
| Interest payments | (2,892) | (5,222) | (4,146) |
| Contingent interest payments | (24,128) | (14,455) | (4,246) |
| Other income | 690 | 295 | 211 |
| Decrease (Increase) in restricted cash | (2,590) | 2,263 | (52) |
| Income taxes | (14,672) | (2,018) | 572 |
| Net cash provided by operating activities | 36,412 | 33,971 | 24,690 |
| **Investing activities** | | | |
| Purchases of receivable portfolios | (103,374) | (89,834) | (62,525) |
| Collections applied to principal of receivable portfolios | 53,362 | 63,374 | 43,423 |
| Litigation settlement proceeds applied to principal of receivable portfolios | - | 692 | - |
| Collections applied to principal of securitization 98-1 | 1,195 | 6,512 | 7,808 |
| Proceeds from put-backs of receivable portfolios | 1,185 | 799 | 882 |
| Proceeds from the sale of property and equipment | - | - | 3 |
| Purchases of property and equipment | (2,525) | (1,015) | (749) |
| Net cash used in investing activities | (50,157) | (19,472) | (11,158) |
| **Financing activities** | | | |
| Proceeds from notes payable and other borrowings | 78,676 | 78,226 | 62,183 |
| Repayment of notes payable and other borrowings | (53,288) | (85,478) | (79,669) |
| Capitalized loan costs relating to financing arrangement | (494) | (245) | (154) |
| Proceeds from sale of common stock, net | - | 30,131 | - |
| Proceeds from exercise of common stock options | 169 | 614 | - |
| Proceeds from exercise of common stock warrants | - | 625 | 2 |
| Proceeds from sale of preferred stock | - | - | 4,588 |
| Payments of preferred dividends | - | (374) | (250) |
| Repayment of capital lease obligations | (199) | (138) | (892) |
| Net cash provided by (used in) financing activities | 24,864 | 23,361 | (14,192) |
| Net increase (decrease) in cash | 11,119 | 37,860 | (660) |
| Cash and cash equivalents, beginning of year | 38,612 | 752 | 1,412 |
| Cash and cash equivalents, end of year | $ 49,731 | $ 38,612 | $ 752 |

**ENCORE CAPITAL GROUP, INC.**

**Consolidated Statements of Cash Flows (continued)**

**Reconciliation of Net Income to Net Cash Provided by Operating Activities**

(In Thousands)

| | Years ended December 31, | | |
|---|---|---|---|
| | 2004 | 2003 | 2002 |
| Net income | $ 23,176 | $ 18,420 | $ 13,789 |
| Adjustments to reconcile net income to net cash provided by operating activities: | | | |
| Depreciation and amortization | 1,951 | 2,023 | 2,452 |
| Amortization of loan costs | 76 | 603 | 661 |
| Amortization of debt discount | - | 742 | 112 |
| Amortization of stock based compensation | 109 | 128 | - |
| Deferred income tax expense (benefit) | 815 | 5,456 | (6,234) |
| Excess tax benefits from stock options | 1,125 | 2,722 | - |
| Increase in income on retained interest | - | - | 414 |
| Provision for portfolio losses | - | - | 1,049 |
| Changes in operating assets and liabilities | | | |
| (Increase) decrease in restricted cash | (2,590) | 2,263 | (52) |
| Increase in other assets | (2,254) | (1,339) | (783) |
| Increase in accrued profit sharing arrangement | 8,132 | 1,569 | 8,802 |
| Increase in accounts payable and accrued liabilities | 5,872 | 1,384 | 4,480 |
| Net cash provided by operating activities | $ 36,412 | $ 33,971 | $ 24,690 |

| | | | |
|---|---|---|---|
| Supplemental schedules of non-cash investing activities: | | | |
| Property and equipment acquired under capital leases | $ - | $ 253 | $ - |
| Supplemental schedules of non-cash financing activities: | | | |
| Issuance of common stock warrants in connection with debt agreements | $ - | $ - | $ 125 |
| Recordation of equity in connection with debt forgiveness | $ - | $ - | $ 4,665 |

**Encore Capital Group, Inc.**
**Supplemental Financial Information**
**Reconciliation of GAAP Income Before Taxes, Net Income, Fully Diluted Earnings Per Share and Cash Flow From Operations to Income Before Taxes, Net Income, Fully Diluted Earnings Per Share and Cash Flow From Operations Excluding One-Time Benefits and Charges**
**For the Quarters and the Years Ended December 31, 2004 and 2003**
(In Thousands, Except Percentages and Earning Per Share)

| | Quarters Ended December 31, | | Years Ended December 31, | |
|---|---|---|---|---|
| | 2004 | 2003 | 2004 | 2003 |
| **Income Before Taxes** | | | | |
| GAAP, as reported | $ 9,674 | $ 5,071 | $ 38,846 | $ 29,423 |
| Gain on settlement of litigation | - | - | - | (7,210) |
| Write off of deferred costs | - | 870 | - | 870 |
| Income before taxes, excluding one-time benefit and charges | $ 9,674 | $ 5,941 | $ 38,846 | $ 23,083 |
| Percentage increase over prior period | 62 8% | | 68 3% | |
| **Net Income** | | | | |
| GAAP, as reported | $ 5,683 | $ 3,841 | $ 23,176 | $ 18,420 |
| Gain on settlement of litigation | - | - | - | (4,376) |
| Write off of deferred costs | - | 528 | - | 528 |
| Net income, excluding one-time benefits and charges | $ 5,683 | $ 4,369 | $ 23,176 | $ 14,572 |
| Percentage increase over prior period | 30 1% | | 59 0% | |
| **Fully Diluted Earnings Per Share** | | | | |
| GAAP, as reported | $ 0 24 | $ 0 16 | $ 0 99 | $ 0 88 |
| Gain on settlement of litigation[1] | - | - | - | (0 21) |
| Write off of deferred costs | - | 0 03 | - | 0 03 |
| Fully diluted earnings per share, excluding one-time benefits and charges | $ 0 24 | $ 0 19 | $ 0 99 | $ 0 70 |
| Percentage increase over prior period | 26 3% | | 41 4% | |
| **Cash Flow From Operations:** | | | | |
| GAAP, as reported | $ 13,158 | $ 7,911 | $ 36,412 | $ 33,971 |
| Income taxes paid | 1,377 | 941 | 14,672 | 2,018 |
| Pre-tax cash flows from operations | $ 14,535 | $ 8,852 | $ 51,084 | $ 35,989 |
| Proceeds from litigation settlement[1] | - | - | - | (11,100) |
| Legal and other costs related to litigation settlement[1] | - | - | - | 3,198 |
| Litigation proceeds applied to portfolio[1] | - | - | - | 692 |

| | | | | |
|---|---|---|---|---|
| Pre-tax cash flow from operations excluding one-time benefit | $ 14,535 | $ 8,852 | $ 51,084 | $ 28,779 |
| Percentage increase over prior period | 64.2% | | 77.5% | |

[1] This is the result of a net pretax gain of $7.2 million, a net after-tax gain of $4.4 million or $0.21 per fully diluted share associated with a litigation settlement during the first quarter of 2003

# APPENDIX F

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

**FORM 10-K**

(Mark One)

X ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2004 or

TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from __________to __________

Commission File Number 000-26489

# ENCORE CAPITAL GROUP, INC.

(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Delaware**<br>(State or Other Jurisdiction of Incorporation or Organization) | **48-1090909**<br>(I.R.S. Employer Identification No.) |
| **8875 Aero Drive, Suite 200, San Diego, CA**<br>(Address of Principal Executive Offices) | **92123**<br>(Zip Code) |

**(877) 445-4581**
(Registrant's Telephone Number, Including Area Code)

Securities registered pursuant to Section 12(b) of the Act: None
Securities registered pursuant to Section 12(g) of the Act:

Common Stock, $.01 Par Value Per Share
(Title of Class)

Indicate by check mark whether the registrant: (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes [X] No [ ]

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. [ ]

Indicate by check mark whether the registrant is an accelerated filer (as defined in Rule 12b-2 of the Act). Yes [ X ] No [ ]

The aggregate market value of the voting stock held by non-affiliates of the registrant totaling 10,455,392 shares was $138,115,728 at June 30, 2004 based on the closing price of the Common Stock of $13.21 per share on such date, as reported by the Nasdaq National Market.

The number of shares of the registrant's Common Stock outstanding at February 14, 2005 was 22,245,174.

**Documents Incorporated by Reference**

Portions of the registrant's proxy statement in connection with its annual meeting of shareholder to be held in 2005, are incorporated by reference in Items 11, 12, 13, 14 of Part III of this Form 10-K

## TABLE OF CONTENTS


| | |
|---|---|
| PART I | 2 |
| Item 1 - Business | 2 |
| Item 2 - Properties | 8 |
| Item 3 - Legal Proceedings | 9 |
| Item 4 - Submission of Matters to a Vote of Securities Holders | 10 |
| PART II | 10 |
| Item 5 - Market for the Registrant's Common Equity Securities and Related Stockholder Matters | 10 |
| Item 6 - Selected Consolidated Financial Data | 11 |
| Item 7 - Management's Discussion and Analysis of Financial Condition and Results of Operations | 13 |
| Item 7A - Quantitative and Qualitative Disclosure about Market Risk | 47 |
| Item 8 - Consolidated Financial Statements | 48 |
| Report of Independent Registered Public Accounting Firm | 49 |
| Consolidated Statements of Financial Condition | 50 |
| Consolidated Statements of Operations | 51 |
| Consolidated Statements of Stockholders' Equity and Comprehensive Income | 52 |
| Consolidated Statements of Cash Flows | 53 |
| Notes to Consolidated Financial Statements | 55 |
| Item 9 - Changes in and Disagreements with Accountants | 76 |
| Item 9A - Controls and Procedures | 76 |
| PART III | 79 |
| PART IV | 79 |
| Item 15 - Exhibits, Financial Statement Schedules, and Reports on Form 8-K | 79 |
| SIGNATURES | 82 |
| Certificate of Principal Executive Officer | 85 |
| Certificate of Principal Financial Officer | 86 |


Table of Contents

## PART I

### Item 1 — Business

**An Overview of Our Business**

*Nature of Business*
Encore Capital Group, Inc. together with its subsidiaries ("Encore") is a systems-driven purchaser and manager of charged-off consumer receivables portfolios. Encore acquires these portfolios at deep discounts from their face values using its proprietary valuation process that is based on the consumer attributes of the underlying accounts. Based upon the ongoing analysis of these accounts, we employ a dynamic mix of collection strategies to maximize our return on investment. The receivable portfolios we purchase consist primarily of unsecured, charged-off domestic consumer credit card receivables purchased from national financial

institutions, major retail credit corporations, and resellers of such portfolios. Acquisitions of receivable portfolios are financed by operations and by borrowings from third parties.

We have been in the collection business for 51 years and started purchasing portfolios for our own account approximately 14 years ago. We purchase charged-off credit card receivables and, to a lesser extent, other consumer receivables, including auto loan deficiencies and general consumer loans. From our inception through December 31, 2004, we have invested over $387.3 million to acquire 8.9 million consumer accounts with a face value of approximately $16.2 billion.

We have established certain relationships with credit card issuers, other lenders and resellers that allow us to purchase portfolios directly through negotiated transactions, and we participate in the auction-style purchase processes that typify our industry. In addition, we enter into "forward flow" arrangements in which we agree to buy receivables that meet agreed upon parameters over the course of the contract term. Since mid-2000, we have purchased pools of consumer receivables from approximately forty credit originators and resellers.

We evaluate each portfolio for purchase using our proprietary valuation and underwriting processes developed by our in-house team of statisticians. Unlike many of our competitors, which we believe often base their purchase decisions primarily on numerous aggregated portfolio-level factors, including the lender/originator, the type of receivables to be purchased, or the number of collection agencies the accounts have been placed with previously, we base our purchase decisions primarily on our analysis of the specific accounts included in a portfolio. Based upon this analysis, we determine a value for each account, which we aggregate to produce a valuation of the entire portfolio. We believe this capability allows us to perform more accurate valuations of receivables portfolios. In addition, we have successfully applied this methodology to other types of receivables, such as auto loan deficiencies and consumer loans.



---

After we purchase a portfolio, we continuously refine our analysis of the accounts to determine the best strategy for collection. As with our purchase decisions, our collection strategies are based on account level criteria. Our collection strategies include:

- outbound calling, driven by proprietary predictive software, by our own sizable collection workforce located at our two call centers;
- the use of a nationwide network of collection attorneys to pursue legal action where appropriate;
- the use of multiple third party collection agencies;
- direct mail campaigns coordinated by our in-house marketing group;
- the transfer of accounts to a credit card provider, generating a payment to us; and
- the sale of accounts where appropriate.

Investors wishing to obtain more information about Encore Capital Group, Inc. may access our Internet site (www.encorecapitalgroup.com) that allows access to relevant investor related information such as SEC filings, analyst coverage and earnings estimates, press releases, featured articles, an event calendar, and frequently asked questions.

***Our Strengths***

*Empirically Based and Technology-Driven Business Processes*. We have assembled a team of statisticians, business analysts and software programmers that have developed and continually enhance proprietary valuation models, software and other business systems that guide our portfolio purchases and collection efforts. Our information technology department has developed and continually updates sophisticated software that manages the movement of data, accounts and information throughout the company. These proprietary systems give us the flexibility, speed and control to capitalize on business opportunities.

*Account-Based Portfolio Valuation*. We analyze each account within a portfolio presented to us for purchase to determine the likelihood and expected amount of payment. We utilize an internally developed valuation process based on a set of proprietary statistical models that predict behavior at the consumer level. Individual consumer characteristics are weighted according to the models, the expectations for each account are then aggregated to arrive at a portfolio-level liquidation assessment and a valuation for the entire portfolio is made. Our valuations are derived in large part from information accumulated on approximately 6.4 million accounts acquired since mid-2000, supplemented by external data purchased from data providers.

*Dynamic Collections Approach*. Over the past three years, we have dramatically reduced our dependence on general outbound calling by expanding our collection strategies. Moreover, because the status of individual debtors changes continually, once each quarter we re-analyze all of our accounts with refreshed external data, which we supplement with information gleaned from our own collection efforts. We change our collection method for each account accordingly.

***Purchases by Quarter***

The following table summarizes the purchases we have made by quarter, and the respective purchase prices *(in thousands, except percentages)*:

| Quarter | # of Accounts | Face Value | Purchase Price | Average Purchase Price as a Percentage of Face |
|---|---|---|---|---|
| Q1 2002 | 331 | $ 717,822 | $ 13,145 | 1.83 % |
| Q2 2002 | 386 | 514,591 | 10,478 | 2.04 % |
| Q3 2002 | 752 | 981,471 | 21,002 | 2.14 % |
| Q4 2002 | 380 | 591,504 | 17,900 | 3.03 % |
| Q1 2003 | 380 | 589,356 | 18,803 | 3.19 % |
| Q2 2003 | 982 | 1,177,205 | 26,270 | 2.23 % |
| Q3 2003 | 341 | 640,197 | 19,350 | 3.02 % |
| Q4 2003 | 332 | 881,609 | 25,411 | 2.88 % |
| Q1 2004 | 400 | 786,398 | 17,248 | 2.19 % |
| Q2 2004 | 296 | 758,877 | 19,031 | 2.51 % |
| Q3 2004 | 365 | 721,237 | 20,967 | 2.91 % |
| Q4 2004 | 530 | 1,195,090 | 46,128 | 3.86 % |

***Purchases by Paper Type***

The following table summarizes the types of charged-off consumer receivable portfolios we have purchased for the periods presented *(in thousands)*:

| | Years Ended December 31, | | |
|---|---|---|---|
| | 2004 | 2003 | 2002 |
| Credit card | $ 74,238 | $ 83,809 | $ 60,613 |
| Other | 29,136 | 6,025 | 1,912 |
| | $ 103,374 | $ 89,834 | $ 62,525 |



***Purchase Concentrations***

The following table summarizes the concentration of our purchases by seller by year sorted by total aggregate cost for the five year periods presented *(in thousands, except percentages)*:

**Concentration of Initial Purchase Cost by Seller**

| | For The Years Ended December 31, | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2004 | | 2003 | | 2002 | | 2001 | | 2000 | | |
| | Cost | % | Cost | % | Cost | % | Cost | % | Cost | % | Cos |
| Seller 1[2] | $ 20,454 | 19.8% | $ 30,420 | 33.9% | $ 20,223 | 32.4% | $ 13,222 | 33.9% | $ - | 0.0% | $ 84, |
| Seller 2 | 1,647 | 1.6% | 23,614 | 26.3% | 5,214 | 8.4% | 2,463 | 6.3% | - | 0.0% | 32, |
| Seller 3 | - | 0.0% | 3,862 | 4.3% | 23,463 | 37.5% | 2,292 | 5.9% | - | 0.0% | 29, |
| Seller 4 | 21,300 | 20.6% | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% | 21, |
| Seller 5 | 17,624 | 17.0% | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% | 17, |
| Seller 6 | 15,063 | 14.6% | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% | 15, |