STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK HERNANDEZ, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 7844 |
| | ) | |
| MIDLAND CREDIT MANAGEMENT, INC.; | ) | Judge Rebecca R. Pallmeyer |
| MRC RECEIVABLES CORPORATION; AND | ) | |
| ENCORE CAPITAL GROUP, INC., FORMERLY | ) | |
| KNOWN AS MCM CAPITAL GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Frank N. Hernandez, Jr. received a dunning letter from Defendant Midland Credit Management, Inc. (hereinafter, "MCM"). Along with an offer to settle Hernandez's outstanding debt at a significant discount, the letter included a privacy notice that disclosed the possibility that MCM or its corporate parent, Defendant Encore Capital Group, Inc. (hereinafter, "Encore"), might share nonpublic information about Hernandez (gathered in the course of debt collection) with certain nonaffiliated third parties unless Hernandez took affirmative steps to prevent this.

Hernandez alleges that the disclosure of such information, or the threat of such disclosure, violates the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter, "FDCPA"). Hernandez moves for the certification of a class of Illinois debtors to whom Defendants sent this privacy notice between December 3, 2003 and December 23, 2004 and Wisconsin debtors to whom Defendants sent this privacy notice between January 11, 2004 and January 31, 2005. For the reasons explained here, Plaintiff's motion is granted.

## STATEMENT OF FACTS

This court recently set out much of the relevant background in its order denying Plaintiff's motion for judgment on the pleadings, *Hernandez v. Midland Credit Mgmt. Inc.,* No. 04-7844, 2006 WL 695451, *1-2 (N.D. Ill. Mar. 14, 2006), but outlines the facts briefly here.

Roughly fifteen years ago, Illinois resident Hernandez obtained a credit card from Providian

National Bank which he used for household purchases as well as car and hotel rentals. (Hernandez Dep. at 47-50.) Hernandez stopped making payments on this card in August 2000, (*id.* at 50,) and Providian, presumably, sold the defaulted debt sometime thereafter, although the exact date of that sale does not appear in the record. Plaintiff's reason for not paying Providian also does not appear in the record, but MRC Receivables Corp. (hereinafter, "MRC,") eventually acquired the Providian debt and contracted out collection to MCM.[1] (Memorandum in Support of Plaintiff's Motion for Class Certification (hereinafter, "Pltf.'s Mem.,") at Ex. A at 1.)

On November 14, 2004, MCM sent Hernandez a letter offering to settle his debt at a substantial discount.[2] (*Id.*) The letter also included a form privacy notice generated by MCM's legal department.[3] (*Id.* at 2-3; Defendant Midland Credit Management, Inc.'s Response to Plaintiff's Interrogatories (hereinafter, "Def. MCM's Resp. to Intrg.,") at 2.) The privacy notice states that Defendant Encore (the parent corporation of both MCM and MRC),[4] on behalf of its affiliates, including MCM, "is delivering this Privacy Notice so that you understand what nonpublic personal information we gather about you, how we use or share that nonpublic personal information, and the safeguards we have in place in order to protect that nonpublic personal information." (Pltf's Mem. at Ex. A at 3.) The privacy notice explains that:

---

[1] MRC, a Delaware corporation with its principal place of business in California, (Def. MCM's Answer at 2), was originally named as a Defendant but has been dismissed by stipulation. Defendant MCM is a Kansas corporation with its principal place of business in California. (*Id.*)

[2] Plaintiff testified that he initially did not want to pay off his debt now that it was in MRC's hands because, in addition to believing that the collection attempt violated the FDCPA, he believed that the statute of limitations had expired in the time since his initial default. (Hernandez Dep. at 61.)

[3] The court's memorandum opinion denying Plaintiff's motion for judgment on the pleadings, relying solely on Plaintiff's allegations in the complaint, states that Defendant Encore prepared the privacy notice. *Hernandez v. Midland Credit Mgmt.*, No. 04-7844, 2006 WL 695451, *1 (N.D. Ill. Mar. 14, 2006). Defendant MCM's response to Plaintiff's interrogatories makes clear that MCM itself generated this notice.

[4] Defendant Encore is a publicly traded Delaware corporation with its principal place of business in California. (Def. Encore's Answer at 3-4.) Encore also operated under the name MCM Capital Group, Inc. at the time relevant to this action.

> In connection with collection on, or servicing, your account, we collect nonpublic personal information about you from the following sources:
> • Directly from you, application or other forms (e.g., your name, address, social security number, telephone number and other information obtained from our communications with you);
> • From your account transactions with us, our affiliates or others including, without limitation, the originating creditor (e.g., account balance, payment history, banking information and customer information);
> • From consumer reporting agencies (e.g., creditworthiness or credit history); and
> • From other nonaffiliated third parties (e.g., providers of location information and demographic information).

(*Id.*) The notice states, further, that Encore and its affiliates reserve "the right to disclose all the nonpublic personal information" they collect to third parties, including:

> • Financial service providers, such as mortgage bankers or other lenders;
> • Non-financial companies, such as direct marketers or retailers.

(*Id.*) Finally, the privacy notice included an opt-out provision that advised Hernandez that if he wished to prevent the disclosure of nonpublic personal information to nonaffiliated third parties, he must make an affirmative request for non-disclosure in writing. (*Id.*) MCM estimates that it sent a privacy notice in this form to approximately 56,793 account numbers with Illinois addresses between December 3, 2003 and March 31, 2004. (Def. MCM's Resp. to Intrg. at 6.)

Hernandez was obviously not alone in receiving this notice, but he may well be alone in his sophstication about federal laws applicable to debt collection. Hernandez has worked as a loan administrator, credit analyst, and collections manager for several companies and banks. (Hernandez Dep. at 16-20.) Although these entities limited their collection efforts to their own accounts receivable (and were therefore not covered by the FDCPA), Hernandez became familiar enough with the FDCPA's provisions to write a training manual for other creditors offering "a high-level overview" of the Act and to give presentations on it. (*Id.* at 20-26, 28-29, 34-35.) In October 2004, Hernandez filed suit against Risk Management Association for violation of the FDCPA; that case has since settled.[5] (*Id.* at 38-40.) Nor is this case the first action in which Hernandez has

---

[5] In April 2005, Hernandez filed suit against City Financial, alleging a violation of the
(continued...)

3

been involved in litigation with MCM. MCM sued Hernandez in late 2001 for the collection of a debt. (*Id.* at 36, 38.) Hernandez has no recollection of this case other than that it was dismissed when MCM and its lawyers failed to appear on the trial date. (*Id.* at 37.)

Hernandez alleges that Defendants' threats to disclose non-public, personal information are not idle ones. He notes Defendant Encore's Report on SEC Form 10-K for the fiscal year ending December 31, 2004 (hereinafter, "Rep. SEC 10-K"). That Report identifies, as one of Encore's collection strategies, the "transfer to our credit card partner [of] accounts for which [such a transfer] offers the highest opportunity for success. The credit card partner may offer the debtor the opportunity to establish new credit and transfer the balance on a credit card. If the account is transferred we receive an agreed-upon payment." (Rep. SEC 10-K at 6.) Plaintiff believes that communications between Defendants and Defendants' credit card partners are prohibited by the FDCPA. (Plaintiff's Reply in Support of Motion for Class Certification (hereinafter, "Pltf.'s Reply,") at 7.)

## **PROCEDURAL HISTORY**

On December 3, 2004, Plaintiff Hernandez filed suit against Defendants MCM and Encore, alleging violations of §§ 1692c-1692e of the FDCPA. These provisions of the FDCPA, discussed in greater depth below, generally prohibit certain kinds of third-party communications as well as harassing, threatening, or false communications in connection with debt collection. 15 U.S.C. §§ 1692c-1692e.

In its answer, MCM asserted that (1) the privacy notice contains no false or misleading statements; (2) MCM did not commit any actionable violation of the FDCPA; (3) any violation of the FDCPA was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such an error; and (4) MCM "may possess certain

---

[5](...continued)
Fair Credit Reporting Act. (Hernandez Dep. at 41-42.)

arbitration rights based on contracts entered into by" Hernandez. (Defendant, Midland Credit Management, Inc.'s Answer and Affirmative Defenses to Plaintiff's Complaint (hereinafter, "Def. MCM's Answer"), pp. 11-12.)  Encore makes the same assertions in its answer, adding that Encore (1) did not engage in any debt collection activities and (2) is not a debt collector.  (Defendant, Encore Capital Group, Inc.'s, Answer and Affirmative Defenses to Plaintiff's Complaint (hereinafter, "Def. Encore's Answer"), pp. 12-13.)

On March 14, 2004, the court denied Plaintiff's motion for judgment on the pleadings.  The court declined to hold Defendant Encore liable as a debt collector as defined in the FDCPA as a matter of law and concluded that Defendants Encore and MCM were entitled to develop a factual record to support their defenses.  *Hernandez*, 2006 WL 695451 at 9.  The court now turns to Plaintiff's motion for class certification.  Specifically, Plaintiff requests certification of a class consisting of "(1) all natural persons with Illinois addresses (b) to whom any of the defendants sent the 'privacy notice,' (c) on or after December 3, 2003, and (d) on or before December 23, 2004; plus (2) all natural persons (a) with Wisconsin addresses (b) to whom any of the defendants sent the 'privacy notice,' (c) on or after January 11, 2004, and [(d)] on or before January 31, 2005."  (Unopposed Motion to Enlarge Putative Class Definition (hereinafter, "Class Mot.,") at 2.)

Plaintiff originally proposed a class consisting only of Illinois debtors.  (*Id.* at 1.)  The parties to this litigation, however, were involved in a similar class action regarding exactly the same privacy notice filed in the Eastern District of Wisconsin, captioned *Mitchell v. Midland*, No. 05-24.  (*Id.*)  The *Mitchell* action settled on November 7, 2005, and as a condition of settlement, Defendants agreed not to oppose an alteration of the class of Illinois debtors Plaintiff initially proposed here to include the putative class of Wisconsin debtors from *Mitchell*.  (*Id.*)  The inclusion of Wisconsin debtors is unopposed (and therefore unbriefed), but raises the same issues in terms the putative class' ability to comply with the requirements of Rule 23 as a class consisting only of the original Illinois debtors.  The court's analysis, therefore focuses on the original putative class with the understanding that

if a class consisting only of the Illinois debtors can be certified, the entire proposed class, inclusive of the Wisconsin debtors, can be certified as well.

**DISCUSSION**

The court may certify a class action where doing so would comply with both Rule 23(a) and at least one subsection of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). The prerequisites for all class actions are: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"), (2) commonality ("there are questions of law or fact common to the class"), (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"), and (4) adequacy ("the representative parties will fairly and adequately protect the interests of the class"). FED. R. CIV. P. 23(a). In addition, Plaintiff must establish that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

Plaintiff, the party seeking class certification, "assumes the burden of demonstrating that certification is appropriate." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Defendants have raised no objections to the proposed class period, which for the Illinois debtors begins one year prior to Plaintiff filing this suit and extends to twenty days after it and for the Wisconsin debtors begins one year prior to the filing of the complaint in *Mitchell* and extends to twenty days after it. Defendants do, however, argue that Plaintiff has failed to establish numerosity, commonalty/predominance, typicality, adequacy, or superiority.[6] The court addresses

---

[6] Defendants also argue that this court should deny Plaintiff's motion for class certification because Plaintiff's claims are meritless. (Defs.' Mem. at 1.) The Supreme Court specifically cautions courts not to consider the merits of the plaintiff's case in deciding whether the case can be maintained as a class action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). A court may, of course, look past the pleadings in order to determine whether a plaintiff's case meets the technical requirements of Rule 23, but a motion for class certification is not the
(continued...)

6

these arguments in turn.

**I.    Numerosity**

Plaintiff's theory of the case is that the privacy notice itself violates the FDCPA. With respect to Illinois alone, Defendant MCM admits that it sent this notice to more than 56,000 delinquent accounts between December 3, 2003 and March 31, 2004. (Pltf.'s Reply at 7.) Even if the residents at any particular address have several debts in default collectible by Defendant MCM, the number of putative class members would still be quite large.

If the exact size of the class is unknown, "[t]he court is entitled to make common sense assumptions in order to support a finding of numerosity." *Peterson v. H & R Block Tax Servs., Inc.*, 174 F.R.D. 78, 81 (N.D. Ill. 1997). The court finds that Plaintiff's putative class is sufficiently numerous that joinder of each member would be impracticable.

**II.   Commonality/Predominance**

"A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The commonality bar is, in fact, quite low. *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996) ("Plaintiffs need only show that there is . . . one question of law or fact common to the class to satisfy the commonality requirement."). The requirement that common issues predominate over individual ones in a class certified under Rule 23(b)(3), on the

---

(...continued)
appropriate place to resolve substantive issues of liability unless they overlap with issues raised by Rule 23(a) and Rule 23(b). *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001) (finding that the district court should have resolved the merits to the extent that it would answer the choice of law question and shed light on the superiority inquiry before certifying the class).

Here Defendants argue that Defendant Encore does not meet the statutory definition of a debt collector and that Defendant MCM generated the privacy notice in strict compliance with the requirements of the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801, *et seq.* (Defs.' Mem. at 6-8.) These arguments may well be relevant to summary judgment. They do not, however, shed light on whether common issues predominate over individual ones or whether Defendants mailed the same privacy notice to so many putative class members as to make joinder impracticable.

other hand, is more demanding. Because commonality is coextensive with predominance, the court undertakes both inquiries simultaneously.

Plaintiff argues that the common nucleus of operative facts is that Defendants sent a form privacy notice to each member of the class, and the dispositive issue in this litigation is the question of whether that document violates the FDCPA. (Pltf.'s Mem. at 10.) The sole individual issue, in Plaintiff's view, is the determination of class membership, i.e., to whom did Defendants sent their privacy notice. (*Id.*) Defendants have a different view of the case. They argue that the commonality requirement has not been met because "the actual liability-determinative conduct is not standardized. . . . In fact, the core relevant inquiry here is whether each putative class member's information was disclosed to a third party and, if so, whether the disclosure violates the FDCPA." (Defendants' Opposition to Plaintiff's Motion for Class Certification (hereinafter, "Defs.' Mem.,") at 9.) On Defendants' theory, individual issues predominate, including whether each putative class member found the notice confusing; whether each individual exercised his or her right to opt-out of third-party disclosures set out in the privacy notice; and whether Defendants in fact disclosed any putative class member's information. (*Id.* at 12.)

The court believes Defendants misunderstand the nature of Plaintiff's accusations. The FDCPA prohibits all communications "in connection with the collection of any debt" between a debt collector and "any person other than the [debtor], his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector" "without the prior consent of the [debtor] given directly to the debt collector." 15 U.S.C. § 1692c(b). The Act also prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Plaintiff contends that if Defendants make the disclosures set out in their privacy notice, Defendants will violate 15 U.S.C. § 1692c(b). (Pltf.'s Reply at 7.) More importantly, even if they never make such disclosures, Plaintiff argues that merely by threatening to do so, Defendants violate the FDCPA:

Claiming the ability to make disclosures prohibited by 15 U.S.C. § 1692c(b) is, says Plaintiff, prohibited by 15 U.S.C. § 1692e(5), which proscribes a "threat to take any action that cannot legally be taken or that is not intended to be taken . . . ." (*Id.*)  Under this theory of the case, neither Plaintiff nor any putative class member would have to establish that the privacy notice is confusing. Rather, as Plaintiff suggests, the privacy notice's ability to act as an effective threat to induce collection relies on the clarity of the proposed disclosures.  (*Id.* at 8.)  Furthermore, even if Plaintiff had espoused a theory that succeeded or failed on a determination of whether the privacy notice was confusing, such a question is answered objectively and universally, not subjectively on an individual-by-individual basis.  *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("[T]he question whether a dunning letter violates the Fair Debt Collection Practices Act does not require evidence that the recipient *was* confused–or even . . . whether he read the letter.").

Nor, on Plaintiff's view, would any putative class member have to establish that Defendants did in fact disclose his or her personal information to a prohibited third party.  So long as the disclosures Defendants reserved the right to make under the privacy notice would have violated the FDCPA, Plaintiff contends, the simple act of sending the privacy notice to the debtors runs afoul of the statute whether or not those disclosures were ever actually made.  15 U.S.C. § 1692e(5).

Finally, there may be individual issues related to whether Plaintiff or any putative class member actually accepted Defendants' invitation to opt out of the disclosure regime set out in the privacy notice, but in the court's view, those issues are also irrelevant.  15 U.S.C. § 1692c(b) prohibits disclosures to third parties (that are not consumer reporting agencies or lawyers for the debtor, creditor, or debt collector) without prior consent.  Disclosure to third parties is, under the FDCPA, an opt-in system.  Thus, failure of Plaintiff or any putative class member to opt out per Defendants' privacy notice is irrelevant from the perspective of Defendants' FDCPA liability under Plaintiff's theory of the case.

The court agrees with Plaintiff that whether Defendants' privacy notice violates the FDCPA

is an issue common to all putative class members. Defendants' defenses–in particular, its claim that any FDCPA-violative portion of the privacy notice is a *bona fide* error arising from an attempt to comply with the Gramm-Leach-Bliley Act (hereinafter, "GLB"), 15 U.S.C. § 6801, *et seq.*–can also be resolved on a classwide basis. Moreover, because Plaintiff seeks statutory damages only, there are no individual issues related to the actual loss each putative class member might have suffered based on a prohibited actual disclosure of nonpublic information. *Bartlett v. Heibl*, 128 F.3d at 499.

**III.	Typicality**

Plaintiff's claim is typical "'if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Plaintiff argues that the putative class is defined around Plaintiff's typicality. (Pltf.'s Mem. at 11.) Hernandez's claim arises from a form notice he received. Any other Illinois or Wisconsin resident will be a class member only if he or she also received the same form notice in the appropriate class period.

Defendants, however, paint Hernandez as an FDCPA expert who cannot possibly claim to have been confused by Defendants' privacy notice. (Defs.' Mem. at 10.) The court recognizes that a named plaintiff who might be subject to unique defenses should fail the typicality requirement. *Robles v. Corporate Receivables, Inc.*, 220 F.R.D. 306, 309 (N.D. Ill. 2004) ("The presence of defenses peculiar to the named plaintiff class or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiffs' representative.") (internal quotation marks and citations omitted). As explained above, however, Hernandez's understanding of the privacy notice has no relevance under Plaintiff's theory of Defendants' liability.[7] For this reason, the court finds Plaintiff satisfies the typicality requirement

---

[7]	Indeed, it is not clear that a plaintiff's subjective understanding is ever relevant when a plaintiff seeks statutory as opposed to actual damages for a violation of the FDCPA. *See, e.g.*,
(continued...)

in spite of his demonstrated facility with the FDCPA.

**IV.     Adequacy**

The typicality requirement tends to merge with the adequacy requirement; both Rule 23(a) requirements ask "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982).  The adequacy requirement, however, "also raises concerns about the competency of class counsel and conflicts of interest." *Id.*  Taking the latter inquiry first, Plaintiff provided an extensive resume for the law firm of Edelman, Combs, Latturner & Goodwin, L.L.C.  (Pltf.'s Mem. at Ex. C.)  Defendant has not challenged class counsel's adequacy, and this court finds class counsel adequate under Rule 23(a)(4).

Defendants' attacks on the adequacy of Hernandez to act as the class representative, however, are more explicit.  Defendants argue that Hernandez has a credibility problem and that he has abdicated his role as class representative to his attorneys.  (Defs.' Mem. at 10-11.)  In support of their first argument, Defendants note that in this lawsuit Hernandez is arguing that Defendants' conspicuous disclosures are unlawful.  (*Id.* at 11.)  Hernandez is involved in a separate suit against City Financial in which, according to Defendants,[8] he is alleging that City Financial's disclosures are not conspicuous enough under the Fair Credit Reporting Act (hereinafter, "FCRA"), 15 U.S.C. § 1681, *et seq.*  (*Id.*)

In the court's view, Hernandez's pursuit of purportedly inconsistent theories in these two cases does not cast a shadow over his credibility.  *Buzoiu v. Risk Mgmt. Alternatives, Inc.*, No. 03-3579, 2004 WL 1505061 (E.D. Pa. June 14, 2004), the case cited by Defendants in support of their

---

[7](...continued)
*Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995) (awarding statutory damages without proof that the FDCPA plaintiff was misled).

[8]     Hernandez could not recall what the suit was about at his deposition. (Hernandez Dep. at 41.)

argument, (Defs.' Mem. at 10,) is readily distinguishable. In *Buzoiu*, the FDCPA plaintiff gave contradictory testimony in two depositions on the question of when and how often she contacted the defendant debt collector. *Buzoiu*, 2004 WL 1505061 at 2-5. If she had only contacted the debt collector once prior to a certain date, as she testified originally, there could be no FDCPA violation. *Id.* at 2. If, on the other hand, as she testified later, she contacted the debt collector more than once, both before and after that date, defendants were liable. *Id.* The *Buzoiu* court found plaintiff to be an inadequate class representative because the inconsistencies in her testimony went to the merits of the case and provided defense counsel with ample ammunition to attack her truthfulness on cross-examination. *Id.* at 6-7. Here, should defense counsel raise Hernandez's position in his City Financial suit, Hernandez can point to the differing disclosure requirements for parties regulated by the FCRA and parties regulated by the FDCPA. That his legal theories are, in Defendants' view, inconsistent does not support the conclusion that his testimony concerning the facts is not to be believed.

In support of their second argument, Defendants point to Hernandez's testimony that while he understands why class counsel recommended that he name MCM as a defendant, Hernandez did not know why Encore and (initially) MRC were named as well.[9] (Hernandez Dep. at 83.) Hernandez has also met class counsel in person only once and has spoken to them on the telephone only a handful of times, never for longer than a few minutes. (*Id.* at 93.) Again, these circumstances do not, in the court's view, detract from Hernandez's ability to serve as a class representative. So "long as a class representative's interests do not conflict with those of the proposed class, she need only have a marginal familiarity with the facts of her case and need not understand the larger legal theories upon which her case is based." *Randle v. GC Servs., L.P.*, 181 F.R.D. 602, 604 (N.D. Ill. 1998). Other portions of Hernandez's testimony reveal that he exceeds

---

[9] The attempt to color Plaintiff as inadequately knowledgeable to rein in class counsel is somewhat at odds with Defendants' prior attempt to suggest that he is too knowledgeable to meet the typicality requirement.

the low level of sophistication requisite to qualify as an adequate class representative, and although class counsel necessarily is the driving force behind some of the more complicated legal theories, Hernandez has not entirely ceded the litigation to his attorneys.  For instance, Hernandez found class counsel, answered Defendants' interrogatories, and maintains a file related to this litigation. (Hernandez Dep. at 80-82.) Furthermore, Hernandez appears to understand why the privacy notice violates the FDCPA and understands why this case should proceed as a class action. (*Id.* at 68-71, 92.)

Defendants infer that Hernandez bears a grudge against Defendant MCM for its prior suit against him. (Defs.' Mem. at 11.) Regardless of his feelings about MCM, Hernandez testified that his purpose in bringing this action was to stop Defendants from violating the FDCPA. (Hernandez Dep. at 63-64.) Hernandez further testified that he would not settle this case for a simple forgiveness of his debt. (*Id.* at 62.) The court concludes that Hernandez is an adequate class representative.

**V.     Superiority**

Plaintiff argues that the class mechanism is particularly appropriate in this instance because unsophisticated consumers may not recognize that the privacy notice violates the FDCPA. (Pltf.'s Mem. at 12.) Individuals are also less likely to bring their own suits, according to Plaintiff, because, in general, persons who have defaulted on their debts are unlikely to have the resources to retain counsel to pursue the alleged FDCPA violation. (*Id.*) Plaintiff notes that the cost of litigation vis-a-vis the size of the expected recovery makes individual lawsuits prohibitively expensive, rendering the class mechanism the sole means of deterring Defendants from continuing to issue the allegedly violative privacy notice. (*Id.*) Indeed, Congress specifically contemplated the appropriateness of the class mechanism when it drafted special damages provisions applicable to FDCPA violations pursued by a class.  15 U.S.C. § 1692k(a),(b).

Defendants do not contest any of these assertions, but instead argue that the *de minimis* recovery of each putative class member makes the class mechanism inferior to individual litigation. (Defs.' Mem. at 13.) The FDCPA caps statutory damages in individual actions at $1,000. 15 U.S.C. § 1692k(a)(2)(A). The FDCPA caps statutory damages in class actions, on the other hand, at the lesser of $500,000 or 1 percent of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(B). The parties have stipulated that Defendants' net worth exceeds $50,000,000, (Dkt. No. 92), so Defendants' reasoning is that the per-plaintiff recovery for the over 56,000 members of the putative class will be less than $8.93.

Plaintiff quibbles with this figure, arguing that in class counsel's experience only 10 to 15 percent of class members actually collect from the class fund, pushing the per capita share of the recovery up to somewhere between $58 and $88. (Pltf.'s Reply at 13.) More fundamental, however, is this court's conclusion that the *de minimis* nature of a class recovery is not a bar to certification where the other requirements of Rule 23 have been met. *Nichols v. Northland Groups, Inc.*, No. 05-2701, 2006 WL 897867, *11 (N.D. Ill. Mar. 31, 2006) (finding *Jones v. CBE Group, Inc.*, 215 F.R.D. 558 (D. Minn. 2003) and *Sonmore v. Checkrite Recovery Servs., Inc.*, 206 F.R.D. 257 (D. Minn. 2001) not controlling and unpersuasive); *see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) (observing in *dicta* that "a de minimis recovery (in monetary terms) should not automatically bar a class action. The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.")

To the extent that any putative class member thinks he or she would rather foot the cost of litigation alone so as not to have to share his or her $1,000 recovery, certification of the putative class under Rule 23(b)(3) is tailored to allow the putative class member to do so. *Sarafin v. Sears, Roebuck & Co.*, 73 F.R.D. 585, 589 (N.D. Ill. 1977). The court will direct that Rule 23(b)(3) notice to class members explain their right to opt out of the class and pursue individual litigation, and that

the notice clearly explain the difference in the size of their recovery should they choose to pursue recovery as part of this class.

## **CONCLUSION**

The court finds Plaintiff has established that the proposed class satisfies the requirements of Rule 23 for certification of a Rule 23(b)(3) opt out class. Plaintiff's motion for class certification (8) is granted.

A class is certified as follows:

All natural persons with Illinois addresses to whom any Defendants sent the form privacy notice at issue in this action on or after December 3, 2003, and on or before December 23, 2004; plus all natural persons with Wisconsin addresses to whom any Defendants sent the form privacy notice at issue in this action on or after January 11, 2004, and on or before January 31, 2005.

ENTER:

Dated: June 27, 2006

_____
REBECCA R. PALLMEYER
United States District Judge